Lois T. SLIVKA, Executrix of the Estate of Joe Slivka, Deceased, Respondent,

v.

George W. HACKLEY, Jr., Appellant.

No. 52058.

Supreme Court of Missouri, Division No. 2.

June 12, 1967.

Motion for Rehearing or for Transfer to Court en Banc Denied Sept. 11, 1967.

James G. Lauderdale, Lexington, for respondent.

Spencer & Petri, Columbia, for appellant.

JAMES A. MOORE, Special Judge.

Plaintiff-Respondent filed her petition for registration of foreign judgment in Lafayette County, seeking to make a judgment of the Circuit Court of Marion County, Illinois, a final personal judgment pursuant to Civil Rule 74.79, V.A.M.R. Defendant-Appellant moved timely, but unavailingly to quash the service of summons. This Court denied his petition for writ of prohibition (No. 51483). Defendant then moved to dismiss and, this motion being overruled, answered.

■ Trial was then had, resulting in a judgment for plaintiff and against defendant. The latter has appealed said judgment and assigns as error, among others, the failure of the trial court to accord defendant due process of law guaranteed by our constitutions, state and national. Hence, this Court has jurisdiction of the appeal. Constitution of Missouri, Art. V, Sec. 3, V.A.M.S.

■ The questions raised do not require a lengthy statement of the facts. Such facts as are to be noticed are to be obtained from the transcript and not from appendices to the briefs of the parties. Koprivica v. Bethesda General Hospital, Mo., 410 S.W.2d 84.

Plaintiff's decedent was a breeder of trotters and pacers in Illinois. Defendant often visited his farm, had mares serviced there, and discussed the acquisition of the stallion "Golden Broom". On August 2, 1958, defendant executed an affidavit, the purport of which was to promise not to breed "Golden Broom" outside of Illinois during the remainder of 1958. The affidavit is addressed to the Investigator for the Illinois State Fair Colt Stakes. Because of the unusual character of the document and the important inferences as to the Illinois aspects of the transaction which arise from it, the affidavit is reproduced here.[1] On the evening of August 13, 1958, decedent called defendant on the telephone and defendant sent a check the next morning for $10,000.00. The Illinois investigator gave his consent. Defendant had the horse picked up by a friend from the Illinois farm and brought to Missouri.

Later in 1958, "Golden Broom" jumped a gate and volunteered his services to "Ella Chenault", a mare owned by defendant. The fruit of this union was "Missouri Broom" whose arrival, in violation of the undertaking of the affidavit, made twelve of his siblings ineligible for the Illinois Colt Stakes.

Defendant characterizes "Missouri Broom's" conception as an act of God for which defendant is not liable. Nonetheless, he registered the colt with the United States Trotting Association, and this action incurred the ire of the owners of seven other colts sired by "Golden Broom" as well as the owners of five remaining at Gait Way Farm.

Plaintiff's decedent was in ill health and died. Thereafter the Illinois suit was brought under Illinois Revised Statutes, 1957, Chapter 110, Sec. 17(1) (a). After an attempt at service by the Illinois attorney apparently aborted, personal service was had by the sheriff of Lafayette. The Illinois judgment was by default, but a full transcript of the hearing was introduced in the Missouri case.

Plaintiff does not take issue with defendant's contention that the full faith and credit clause of the United States Constitution implicitly requires that the court of the initiating state have jurisdiction over the parties and the subject-matter; nor does this Court. The real questions are whether the statutory provisions cited in the preceding paragraph are valid and whether defendant came within their purview.

1. See Appendix.

The statute is presumptively valid and defendant does not seriously challenge its validity except as this Court should see fit to find it applicable to the facts of the case at bar. We are willing to test the Illinois statute and its application by defendant's criterion quoted from the "Historical and Practice Notes" of Albert E. Jenner, Jr., and Philip W. Tone to the Smith-Hurd Illinois Annotated Statutes, as follows: "While the decisions of the United States Supreme Court, which are here controlling, have not always noted the distinction, the requirement that a defendant be accorded 'due process of law' imposes two separate restraints in this area. First, it must appear that the defendant over whom the jurisdiction is asserted had such 'minimum contacts' with the State as to render it consistent with 'traditional notions of fair play and substantial justice' that he be compelled to defend himself there. (Referring to International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95.) Second * * * a method of service must be employed which is reasonably designed to give the defendant actual notice of the pending action against him."

There should be no question here of service when made by a Missouri sheriff in his own county. What then of the required minimal contact to meet constitutional standards?

Our review of the authorities need not commence with Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565, which emphasized the traditional aspects of physical jurisdiction over the parties. Rather, it commences with the now celebrated case of International Shoe Company v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95. The holding in that case is succinctly stated in the Jenner and Tone note cited by appellant and quoted in part above. The case, of course, was a tax case and involved a corporation rather than an individual. Still it is clear that in this day and age a person, natural or artificial, may subject himself to the jurisdiction of a court even though *a capias ad respondendum* may not coerce his physical presence in the forum. (We pass over the notice requirement which is not involved here.) A defendant over whom jurisdiction is asserted must have had such "minimum contacts" with the state as to render it consistent with "traditional notions of fair play and substantial justice" that he be compelled to defend himself and to respond to any adverse judgment rendered against him.

Parenthetically, it might be observed that Mr. Justice Black took strong exception to the something less than completely objective approach of testing in accordance with fair play, justice and reasonableness. 326 U.S. at 322 et seq., 66 S.Ct. at 161 et seq.

Just how subjective this determination may be is perhaps as well illustrated in one of the authorities cited by appellant, Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283. The complexities of that case do not justify that it be set forth at length, but it is to be noted that Mr. Chief Justice Warren felt that even in the space age there are limits to the demise of all restrictions on the personal jurisdiction of state courts. In this connection he said, "However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the 'minimal contacts' with that State that are a prerequisite to its exercise of power over him". 357 U.S. at 251, 78 S.Ct. at 1238. In that case he and a majority of the court failed to find such contacts. Aside from the complexities of the subject-matter, that case furnishes us even less of a guide in view of the dissent of Mr. Justice Black with whom Mr. Justice Burton and Mr. Justice Brennan joined. See particularly his comments on traditional notions of fair play and substantial justice in terms of the convenience of the forum for all concerned. 357 U.S. at 258 and 259, 78 S.Ct. at 1242 and 1243. Mr. Justice Douglas separately dissented, finding there were more than sufficient contacts to support jurisdiction of the Florida courts. 357 U.S. at 262 et seq., 78 S.Ct. at 1244 et seq.

In the wake of these cases came the decision in Conn v. Whitmore, 9 Utah 2d 250, 342 P.2d 871. Some of the distinguishing characteristics of that case will be indicated, but suffice it to say for our immediate purpose that what might offend the Utah courts as inconsistent with traditional notions of fair play and substantial justice might not find accord in Missouri. The heart of the holding in Conn is the Utah concept of the requirement: "[T]here must be some substantial activity which correlates with the purpose to engage in a course of business or some continuity of activity in the state so that deeming the defendant to be present therein is founded upon a realistic basis and not a mere fiction. That this is so and that a single act or transaction does not suffice unless it fits into the above pattern is well established." 342 P.2d at 874.

The factual similarities in Conn and the instant case are more or less superficial—in the former, the sale of a filly and mare by a resident of Illinois to a resident of Utah; in the latter, the sale of a stallion by a resident of Illinois to a resident of Missouri. Unlike Hackley, Whitmore did not visit Illinois, have mares serviced there and discuss acquisition of the particular horse. More importantly Whitmore did *not* make representations to the Illinois authorities, solicit and obtain their approval of the transaction, and agree to hold his vendor harmless from liability under and by virtue of the Illinois statute applicable.

In Trippe Manufacturing Company v. Spencer Gifts, Inc., 270 F.2d 821, the Seventh Circuit held that a foreign corporation was not amenable to suit in Illinois under Section 17 of the Illinois Civil Practice Act. The court explored both the transaction of business within Illinois and the commission of a tort within that state and found neither subsection granted jurisdiction under the facts. This federal court was influenced by Hanson, supra, and also by Grobark v. Addo Machine Co., Inc., 16 Ill.2d 426, 158 N.E. 2d 73, which latter authority the court regarded as the last word from the Illinois Supreme Court.

The Supreme Court of Illinois has given further interpretation of Section 17 in Gray v. American Radiator & Standard Sanitary Corporation, 22 Ill.2d 432, 176 N.E.2d 761. True it is that the case most directly involved the tortious act basis of jurisdiction, but the court thoroughly discussed the minimum contact theory stemming from the International Shoe Company case. The court reaffirmed its observation in Nelson v. Miller, 11 Ill.2d 378, 143 N.E.2d 673, to the effect that the Illinois statute contemplates the exertion of jurisdiction over nonresident defendants to the extent permitted by the due process clause. 176 N.E.2d at 763.

The court reviewed the authorities to determine the constitutional requirement as to contact where the injury itself is the defendant's only contact with the state. In reply to the argument that the International Shoe Company case requires a course of business to be demonstrated to support jurisdiction, the court said, "We do not think, however, that doing a given volume of business is the only way in which a nonresident can form the required connection with this State. Since the International Shoe case was decided the requirements for jurisdiction have been further relaxed, so that at the present time it is sufficient if the act or *transaction* itself has a substantial connection with the State of the forum." (Emphasis supplied.) 176 N.E.2d at 764.

The Illinois Supreme Court acknowledging the existence of decisions where an opposite result was reached on somewhat similar factual situations said, "Little purpose can be served, however, by discussing such cases in detail, since the existence of sufficient 'contact' depends upon the particular facts in each case." 176 N.E.2d at 767.

█ So we find the situation here. The very *transaction* which gave rise to the lawsuit had its origin in Illinois. Defendant subjected himself to the Illinois authorities in furnishing the affidavit required by the

laws of that state, and in securing their approval, and the damages accrued there. With this factual background there is ample basis to conclude that there was present the minimal contact with the State of Illinois to satisfy traditional notions of fair play and that the forum was reasonably convenient to all concerned.

Implicit in the judgment of the trial court are such findings. Under the standard of Civil Rule 73.01(d) V.A.M.R. that judgment will not be disturbed. Moreover, our trial *de novo* on the record reaches the same result.

The judgment is affirmed.

All of the Judges concur.

## APPENDIX

### PLAINTIFF'S EXHIBIT 1.

### AFFIDAVIT

State of Missouri
County of Saline

To Milton M. Mueller, Investigator, and To Whom It May Concern,

Greetings:

The undersigned, George W. Hackley, Jr. first being duly sworn and on his oath deposes and says as follows, To Wit:

1. That he is of lawful age, a resident of SALINE COUNTY, MISSOURI, and operates the Hackley Stock Farms where he has been, is now and for several years past, engaged in breeding and raising fine harness horses, and that:

2. He has recently agreed to purchase from Joe Slivka, owner of the Gait Way Farm, located in Marion County, Illinois, a Standard Bred stallion named Golden Broom, No. 78053, registered with the United States Trotting Association, Columbus, Ohio, and also registered with The Department of Education and Registration in The State of Illinois and bearing the following number therein namely 15487, and that:

3. He, the said George W. Hackley, Jr. is aware of the fact that the said stallion, Golden Broom, has been, during the year 1958, in service to the general public at the Gait Way Farm and nowhere else and will be until August 15, 1958, at which time his service season shall be declared closed, and that:

4. The said Golden Broom was duly qualified with the Illinois State Fair Colt Stakes, Springfield, Illinois, in strict compliance with the Illinois Statutes governing the above mentioned stakes, subject to all the penalties thereby and therein provided, and that:

5. The sale of the said Golden Broom by the present owner, Joe Slivka, and the purchase of said stallion by the undersigned, George W. Hackley, Jr. is being consummated with the written consent of Milton M. Mueller, Investigator, and that:

6. He, said George W. Hackley, Jr. hereby agrees with the above, Milton M. Mueller, Investigator, that the said Golden Broom will not, under any circumstances, be permitted to "stand" in the State of Missouri or any place else and caused to service, or be mated with any mare or mares during the remaining portion of the calendar year of 1958, and that:

7. The transfer of title and ownership of the said stallion, Golden Broom, shall be effective only upon the approval and consent of the said Milton M. Mueller, Investigator, for the Illinois State Fair Colt Stakes, Springfield, Illinois, and that:

8. The said George W. Hackley, Jr. will not, by his actions or any breach of this Affidavit, in any manner during the remainder of the calendar year 1958 cause to be created or permit any liability to accrue or attach to the said seller, Joe Slivka, but on the contrary, shall and does agree to save him harmless and by virtue of the Illinois statute applicable hereto, and the terms

and conditions of this Affidavit as above stipulated.

This Affiant further sayeth not:

/s/ ————————————————
George W. Hackley, Jr.

State of Missouri
County of Lafayette

Sworn and subscribed to on the 2nd day of August, 1958.

/s/ Frances Groves Bricken
NOTARY PUBLIC

My Commission expires: October 21, 1960.