**The SEVEN PROVINCES INSURANCE COMPANY, Ltd., Plaintiff,**

v.

**COMMERCE & INDUSTRY INSURANCE COMPANY, Defendant.**

**Civ. A. No. 16744-3.**

United States District Court
W. D. Missouri, W. D.

Oct. 13, 1969.

George M. Winger, Kansas City, Mo., of Smith, Schwegler, Swartzman & Winger, for plaintiff.

Thomas J. Leittem, Kansas City, Mo., of Shughart, Thomson & Kilroy, for defendant.

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS

BECKER, Chief Judge.

In this case, an alleged reinsurance contract on the S. S. "Aktor" is claimed by plaintiff to have been accepted by defendant, not within the State of Missouri. The S. S. "Aktor" sank while sailing in the Pacific Ocean. Plaintiff is not a citizen of Missouri and does not claim that the reinsurance contract was issued in the State of Missouri nor that the loss occurred here, but plaintiff nevertheless has sued upon the contract in this Court after obtaining service on defendant's agent in this state.

Defendant has moved to dismiss plaintiff's complaint, to quash return of service on it, and alternatively to transfer this cause to the Northern District of California in San Francisco under the doctrine of *forum non con-* *veniens* as provided in Section 1404(a), Title 28, U.S.C.

Service has been had upon Henry Burr, Registered Agent for T. H. Mastin & Co., on June 6, 1968, and defendant agrees that, since Burr was a proper agent of defendant on that date, service on him was proper service on the defendant, if the latter was "amenable to service" in Missouri.[1]

Service was had under Rule 4(d) (3), F.R.Civ.P., which provides for service:

"Upon a domestic or foreign corporation or upon a partnership or other unincorporated association which is subject to suit under a common name, by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant."

The defendant contends that the words "law" and "statute" as used in the quoted part of the rule refer to state law and statute; that the only Missouri law or statute under which defendant could have been served [and therefore the only possible state statutory reference of Rule 4(d) (3)] is Section 375.906 of the Missouri Revised Statutes, V.A.M.S., which permits service upon the Superintendent of the Division of Insurance of Missouri when the defendant is an insurance company not incorporated or organized under the laws of Missouri, and does not have its principal place of business in Missouri; and that such service is permissible only if the action is brought upon a policy issued in Missouri in which the nonresident is a beneficiary or assignee or if the cause of action is one which

---

1. Defendant's letter to the Court dated October 30, 1968, reads as follows:

    "Henry Burr was the Registered Agent for T. H. Mastin & Co., Inc. on June 6, 1968, the date he was served. Thus, if defendant Commerce & Industry is amenable to service, the Burr service was effective."

arises out of business transacted, acts done, or contracts made in Missouri.[2]

The defendant therefore contends that, while the manner of service is admittedly controlled by Rule 4(d) (3), F.R.Civ.P., amenability to service is nevertheless subject to state law, which in this case permits service only under Section 375.906; and that service was not had in the case at bar pursuant to Section 375.906.

■ It is undisputed that the method of service is controlled by Rule 4(d) (3), F.R.Civ.P. Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8. The rule of that case is that the propriety of the method of service must be controlled by the Federal Rules of Civil Procedure, even though the method used does not conform to the method used in the state courts. See also 1A Moore's Federal Practice ¶ 0.317 [5], pp. 3535–3536, where it is said:

"However, Rule 4(d) (3) authorizes service upon a foreign corporation in the manner there stated and does not refer to state law. It is quite true that a state may decide not to extend its jurisdiction to the limits which the constitution allows. Federal courts, therefore, hearing non-federal cases may possibly exercise jurisdiction over foreign corporations when the courts of the state in which the federal court is sitting would not.

Some federal courts have suggested that obtaining jurisdiction over a defendant is a matter falling under the Erie Doctrine and therefore they have looked to the law of the state in which the court is sitting, when hearing a non-federal matter, to see whether the state court would exercise jurisdiction. This view disregards Rule 4(d) (3) and looks only to Rule 4(d) (7) and, in our opinion, is not sound."

■ Defendant, however, contends, in substance, that the proper rule is the one condemned by Professor Moore as "not sound". Defendant's reasoning is (1) that Missouri state courts have held that Section 375.906 R.S.Mo. 1967 (as well as Section 375.210 R.S.Mo. 1949, its predecessor) "prescribes the exclusive method for service of process on foreign insurance companies licensed to transact business in Missouri," Johnson v. Fire Ass'n of Philadelphia, 240 Mo.App. 1187, 225 S.W.2d 370, 371, and cases therein cited, (2) that, therefore, although Rule 4(d) (3) may properly extend the methods of service used in the federal courts beyond those used in the state courts, still "a federal court sitting in diversity in Missouri must look to Missouri standards in determining whether it has jurisdiction over a foreign insurance company in Missouri;"[3] and (3) that, since the meth-

2. Section 375.906, Mo.R.S., 1959, reads as follows:

"2. Service of process shall be made by delivery of a copy of the petition and summons to the superintendent of insurance, the deputy superintendent of insurance, or the chief clerk of the insurance division at the office of the superintendent of insurance at Jefferson City, Missouri, and service as aforesaid shall be valid and binding in all actions brought by residents of this state upon any policy issued or matured, or upon any liability accrued in this state, or on any policy issued in any other state in which the resident is named as beneficiary, and in all actions brought by nonresidents of this state upon any policy issued in this state in which the nonresident

is named beneficiary or which has been assigned to the nonresident, and in all actions brought by nonresidents of this state on a cause of action, other than an action on a policy of insurance, which arises out of business transacted, acts done, or contracts made in this state."

Defendant cites Cedar Investment Co. v. Canal Insurance Co. (E.D.Mo.) 262 F.Supp. 337, l. c. 339–340 where the court noted that it was advised by counsel that "there was no other way of obtaining service upon the defendant other than through the Superintendent of Insurance."

3. Defendant cites Caso v. Lafayette Radio Electronics Corporation (C.A.1) 370 F. 2d 707; Bowman v. Curt G. Joa (C.A.4)

od of service prescribed by Missouri would not allow service on the defendant, therefore the Missouri state courts would never take jurisdiction over a defendant in a case like the one at bar. In the light of the Supreme Court decision in Hanna v. Plumer, *supra*, that reasoning is unsound, being in essence that no service could be obtained under the Missouri statute; therefore the federal court could never obtain jurisdiction over the defendant because it could not obtain jurisdiction, as Missouri would have prescribed, by the method of the Missouri statute. Such reasoning would completely nullify the independent federal control that Rule 4(d) (3) has and would necessarily restrict methods of service used by the federal courts in diversity cases to those used by the state. It is not reasonable, particularly in view of Professor Moore's perceptive commentary and the decision in Hanna v. Plumer, *supra*, to give the rule such a construction.[4]

To state that the method of service need not be restricted to that exclusively authorized by the state court, however, is not to state that the general principle of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, is no longer to be followed in diversity cases. The Eighth Circuit cases of Jennings v. McCall Corp. (C.A. 8, 1963) 320 F.2d 64, and Simpkins v. Council Mfg. Corp. (C.A. 8, 1964) 332 F.2d 733, therefore may, as defendant urges, survive the *Hanna* decision with their rule that the case cannot be entertained by the federal court if it would not be entertained by the Missouri courts for lack of state court jurisdiction over the corporate defendant. Thus, in both *Jennings* and *Simpkins*, the corporate defendant was held not to be subject to service under the state law because they were not "doing business" in Missouri in the manner which Missouri courts then required for jurisdiction over the corporate defendant. As the court stated in *Jennings:*

> "If minimum federal due process standards are met, state law is controlling upon what constitutes doing business for the purpose of conferring personal jurisdiction in the state courts."

Even under the rule of the *Jennings* case, however, the defendant in this case meets the test of a foreign corporation "doing business" through an agent or agents in the State of Missouri, in that it transacted business generally for a substantial period of time in Missouri, although not in respect to the contract out of which this claim arose.[5] Defendant's position that it is not doing business in Missouri, in the absence of a showing to that effect,[6] must be predicated upon the contention that the claim for relief must arise out of the doing of business by the foreign corporation in Missouri. It is true that Missouri courts until recently refused to exercise state court jurisdiction in any other case. That, however, was never an absolute requirement of the letter of the decisions, but merely one of the elements to be con-

361 F.2d 706; and Petrol Shipping Corp. v. Kingdom of Greece (C.A.2) 360 F.2d 103, as post-*Hanna* decisions holding to this effect.

4. If Professor Moore's reasoning is sound that federal standards control amenability to service, it is obvious that the defendant is "doing business" in this district for venue jurisdiction to be properly laid here under Section 1391(c), Title 28, U.S.C.

5. The "minimum contacts" test, as established by International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, is satisfied "if the act or transaction itself has a substantial connection with the state of the forum." See Gray v. American Radiator & Standard Sanitary Corp., 22 Ill.2d 432, 176 N.E.2d 761, 764.

6. In Goldlawr v. Heiman, 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39, the Supreme Court stated that a part of the purpose of the federal courts' devising their own procedures was to clear "whatever obstacles may impede an expeditious and orderly adjudication of the cases and controversies on their merits."

sidered in determining whether the corporation did business in Missouri. As the court noted in Jennings:

"Such cases [7] and the authorities heretofore cited support the trial court's view that the origin of a cause of action is an important factor to consider in determining for state jurisdictional purposes whether the foreign corporation was doing business in the state." 320 F.2d at 72.

The only argument under the *Jennings* and *Simpkins* principles which, if sound, would prevent the obtaining of personal jurisdiction over the defendant in the case at bar is the alleged requirement that service could be had on the defendant only under Section 375.906, and not under Missouri Civil Rules 54.06(c) and 54.20, V.A.M.R. It is clear, however, as has been noted, that Hanna v. Plumer, *supra,* would not restrict the method of service to that required by the Missouri statute. If the service, judged in the light of federal standards, is effective, the only remaining question is whether the Missouri courts would take jurisdiction of a case such as the one at bar. In the absence of a restriction on *method* of service in Missouri, the foreign corporation (insurance company or otherwise) is amenable to service and subject to state court jurisdiction if it comes within the operation of Missouri statutes, rules, decisions or practices otherwise applicable. Otherwise, Missouri courts have not shown any special reluctance to accept jurisdiction of transitory claims for relief when neither plaintiff nor defendant were citizens of Missouri and the cause of action did not arise in Missouri. See Loftus v. Lee, Mo., 308 S.W.2d 654, in which jurisdiction was held to exist if effective personal service could somehow be obtained in Missouri provided there was no abuse of process. Cf. Harbis v. Cudahy Packing Company, 211 Mo.App. 188, 241 S.W. 960; Healy v. ATSF Ry. Co., Mo., 287 S.W.2d 813.

Further, recent decisions have made it clear that the Missouri Supreme Court no longer strictly adheres to the limited "doing business" doctrine of the *Jennings* and *Simpkins* cases, but rather has expressed its preference for the "minimum contacts" theory of corporate jurisdiction. As this Court recently noted in its consideration of the new Missouri "single act" longarm statute, Section 506.500, R.S.Mo.,[8] in Adams Dairy Co. v. National Dairy Corp. (W. D.Mo.) 293 F.Supp. 1164:

"* * * when the Missouri legislature enacted Section 506.500 in 1967 it was taking action consistent with that taken by many other states since the landmark decisions of the Supreme Court in International Shoe

---

7. The case chiefly quotes Collar v. Peninsular Gas Co., Mo., 295 S.W.2d 88, and Hayman v. Southern Pacific Co., Mo., 278 S.W.2d 749, both of which predicated their respective results on whether the cause of action arose from the corporation's activity within the state. Neither case, however, effectively closed the door to widening the "amenability to service" concept to the full scope which is employed federally. In the *Collar* case, the Court stated:

"It becomes apparent, therefore, that we must determine upon the foregoing facts, whether defendant was doing business in this state so as to become amenable to personal service which would support the rendition of a general judgment against it. At this point it may be well to state that this question is 'not one of local law or of statutory construction' but is 'one of due process of law, under the Constitution of the United States.'" 295 S.W.2d 88, 1. c. 91.

In Shannon v. Brown & Williamson Tobacco Corp. (W.D.Mo.) 167 F.Supp. 493, 494, the federal court sitting in Missouri had decided as early as 1958 that "Missouri has expressed a willingness to extend its jurisdiction over foreign corporations to the limits allowed within the bounds of due process."

8. The enactment of this statute was meant to give effect to a liberal trend in jurisdiction over foreign corporations in Missouri, amounting in essence to a legislative acceptance of the "minimum contacts" doctrine. See the opinion of this Court in Adams Dairy Co. v. National Dairy Corp. (W.D.Mo.) 293 F.Supp. 1164.

Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957)."

That view is confirmed by the 1967 decision of the Missouri Supreme Court in Slivka v. Hackley, Mo., 418 S.W.2d 89, in which it was held:

"Our review of the authorities need not commence with Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565, which emphasized the traditional aspects of physical jurisdiction over the parties. Rather, it commences with the now celebrated case of International Shoe Company v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95. * * * [I]t is clear that in this day and age a person, natural or artificial, may subject himself to the jurisdiction of a court even though a *capias ad respondendum* may not coerce his physical presence in the forum * * * A defendant over whom jurisdiction is asserted must have had such 'minimum contacts' with the state as to render it consistent with 'traditional notions of fair play and substantial justice' that he be compelled to defend himself and to respond to any adverse judgment rendered against him." *Id.* at 91 [9]

In this regard, defendant's reliance upon the recent case from this Court of Kamas State Bank v. American Surety Company of New York (W.D.Mo.) 285 F.Supp. 430, is misplaced. In that case, the Court said:

"As to whether Missouri courts would exercise jurisdiction over defendants, if given the opportunity to try such a case as is here presented, this Court cannot say. This Court can feel safe in saying it doubts seriously whether a Missouri state court can be presented with such a case for the reason that under the facts alleged, service of process through the Missouri court system cannot be made. Numerous state decisions hold that service of process in state court on a foreign insurance corporation can be made only through the methods provided in Section 375.210, R.S.Mo. (1959)."

That case, however, was decided under judicial interpretation of Section 375.-210, R.S.Mo., 1949, the predecessor to Missouri Revised Statute 375.906, Amended Laws 1967, p. 557 and before many of the Missouri decisions mentioned herein. Therefore, the earlier decisions must be considered in the light of decisions enunciated by the Missouri Supreme Court in its 1967 (and later) decisions. In the light of those later decisions, Section 375.906 can no longer be construed with certainty to provide the exclusive method of nonresident's obtaining service over a foreign insurance company because, if it were so

9. Despite the dictum in the *Jennings* case that whether the cause of action arose out of the course of business conducted in the state is only one factor to be considered in determining whether the "doing business" test was met in Missouri, some authorities believed that Morrow v. Caloric Appliance Corporation, Mo., 372 S.W.2d 41, was the culmination of a line of Missouri cases requiring that the cause of action arise out of the business conducted here for the corporation to be subject to service in Missouri. Neither *Morrow*, nor any other Missouri case, indicates this to be an absolute necessity. All recent relevant Missouri cases are careful not to rule out the "minimum contacts" doctrine. *Morrow*, for instance, has language which pays deference to that doctrine.

See also State ex rel. Mercantile National Bank at Dallas v. Rooney, Mo. en banc, 402 S.W.2d 354, where the Missouri Supreme Court manifested a thorough familiarity with the "minimum contacts" doctrine and stated that it was the duty of the Missouri legislature, not the courts, to write the statutory law of Missouri. The case shortly antedated the enactment of the liberal "single act" statute, Section 506.500, Mo.R.S. See also the slightly earlier (1965) case of State ex rel. Pressner and Company v. Scott, Mo. en banc, 387 S.W.2d 539, where the standards for out-of-state service were referred to as "ever shrinking" and "the possibility of future legislation" was looked to.

construed, its requirement that the claim arise out of a policy issued in this state on which a resident is beneficiary, or otherwise out of acts done, business transacted or contracts made in this state, would impose requirements in excess of the federal "minimum contacts" doctrine now expressly and generally recognized by Missouri in Slivka v. Hackley, *supra,* involving Illinois law. To be consistent with current Missouri decisional law trends, the only construction which can be placed on the statute is that it affords an alternative means of service, available when the foreign insurance company cannot otherwise be served as a corporation under the "minimum contacts" doctrine. Although, by virtue of Rule 4(d) (3) and the *Hanna* decision, the federal court may have extended jurisdiction in spite of a state rule, the Missouri rule of Johnson v. Fire Ass'n of Philadelphia, 240 Mo.App. 1187, 225 S.W.2d 370 (that Section 375.210 "prescribes the exclusive method for service of process on foreign insurance companies licensed to transact business in Missouri"), appears to have been altered by the combined effect of Rules 54.20 and 54.06, Mo.R.Civ.P., adopted in 1960. Rule 54.20 reads as follows:

"Service upon insurance companies in civil actions *may* be had as now or hereafter provided by statute including, but not by way of limitation, the provisions of the Insurance Code contained in Chapters 375 to 381 inclusive of the Revised Statutes of Missouri." [10]   (Emphasis added)

Rule 54.06 reads that service may be obtained:

"Upon a domestic or foreign corporation or upon a partnership or other unincorporated association, when by law it may be sued as such, by delivering a copy of the summons and of the petition to an officer, partner, or a managing or general agent, or by leaving the copies at any business office of the defendant with the person having charge thereof or by delivering copies to any other agent authorized by appointment or required by law to receive service of process, and if the agent is one authorized by law to receive service and the law so requires, by also mailing a copy to the defendant."

In the recent case of State of Kansas ex rel. American Steel Works v. Hartford Accident & Indemnity Company, Mo.App., 426 S.W.2d 720, the Kansas City Court of Appeals refrained from ruling whether service on a nonresident insurance company could only be obtained by service on the Superintendent of Insurance or whether service may as well be had under Rule 54.06. Therefore, if this Court should hold that the latter service were proper, it would be taking what is thus far a permissible view of current Missouri state law.[11] That point, however, need not be reached here, when by virtue of *Hanna* and Rule 4(d) (3), defendant has been effectively served here, and by virtue of Missouri's recent adoption of the "minimum contacts" doctrine, it was also amenable to such jurisdiction on the basis of such service.

10. The Special Committee Note to Rule 54.20 reads as follows
      "This rule incorporates by reference the existing provisions of the following Revised Statutes of Missouri concerning service on insurance companies. * * * Section 375.210 [predecessor to Section 375.906] relating to foreign insurance companies * * * These statutory methods of service are not exclusive, and are in addition to any other authorized method of service under these Rules."

The Missouri Supreme Court attaches considerable significance to the Special Committee Notes in general. See, e. g., State ex rel. Gray v. Jenson, Mo., 395 S.W.2d 143, 19 A.L.R.3d 1109.

11. This case, however, is unlike those cases in which there was only a single act or single transaction within the jurisdiction. In this case the defendant has been generally conducting insurance business within the state and district. See Anno., 27 A.L.R.3d 397.

# 266

For example, in Slivka v. Hackley, *supra,* it was held that, in a suit in Missouri on an Illinois judgment, where a stallion jumped a fence in Missouri and bred defendant's mare in spite of a condition of a sale agreement made in Illinois, personal service was properly obtained by the Illinois longarm statute. The standards thus developed—that such contacts should exist which "render it consistent with 'traditional notions of fair play and substantial justice' that [defendant] be compelled to defend himself" in the forum (418 S.W.2d 89, l. c. 91) and that it is enough if acts done within the state imply consent to its jurisdiction, even if only remotely related or unrelated to the cause of action at bar (Sanders Associates, Inc. v. Galion Iron Works (C.A. 1) 304 F.2d 915, and cases cited therein)—are present in the case at bar. "[M]inimal activities of a corporation may render it subject to federal service of process." 1 Moore's Federal Practice ¶ 0.140 [4], p. 1331.

Alternatively, defendant has moved for a change of venue to the Northern District of California under Section 1404(a), Title 28, United States Code, which reads as follows:

"(a) for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

The allegations which defendant states to support its alternative motion are that (1) many of the facts upon which the claim is based occurred in California; (2) many of the witnesses live and reside in California; and (3) the matter could have properly been brought in that district by the plaintiff.

A separate order will be entered on the motion to transfer after the parties have been given an opportunity to offer evidence on the issues raised thereby.

For the foregoing reasons, it is hereby

Ordered that the motion of defendant to dismiss be, and it is hereby, denied.

