**AMERICAN HOECHST CORPORATION,**
Plaintiff,

v.

**BANDY LABORATORIES, INC.,**
Defendant,

and

Bi-Vet Laboratories, Inc., Defendant.

Civ. A. No. 17352-2.

United States District Court,
W. D. Missouri, W. D.

Jan. 28, 1970.

Robert F. Redmond, III, Terrrell, Van Osdol & Magruder, Kansas City, Mo., for plaintiff.

Bob Burleson and Jim D. Bowmer, Bowmer, Courtney & Burleson, Temple, Tex., James C. Logan, Watson, Ess, Marshall & Enggas, Kansas City, Mo., for defendants.

## MEMORANDUM OPINION AND ORDER

COLLINSON, District Judge.

Defendants manufacture and sell certain vaccines for animals. Plaintiff was a jobber or wholesaler of some of those vaccines, buying from defendants and selling to the trades. Such products have expiration dates on them, beyond which they cannot be sold. Plaintiff returned outdated products which had not been sold to defendants and demanded a refund, which defendants refused to make. This suit is for some $91,000.00 which plaintiff claims is owed it on such returned merchandise.

The plaintiff is a Missouri corporation, and the defendants are Texas corporations, not registered to do business in Missouri and maintaining no office in Missouri. Plaintiff filed this suit in Missouri and obtained service under the provisions of the new Missouri "long-arm" Statute (No. 506.500 V.A.M.S.). The defendants have filed motions to dismiss for want of jurisdiction or in the alternative to transfer the cases to Texas under the provisions of 28 U.S.C. 1404(a).

An evidentiary hearing was held on the issues raised by the affidavits filed for and against the motion to dismiss.

The Court finds the facts in this regard to be that in the summer of 1966 Mr. Bandy, a managing officer of both defendant corporations was in Kansas City, Missouri and contacted officers of plaintiff corporation, two of whom took him to lunch; and during and after lunch there was a discussion of a new hog cholera vaccine which had been perfected, but not yet marketed to any extent, by defendants.

The parties had not done business before, but the officers had met at conventions and were well acquainted with the type and scope of each other's business. At this meeting Mr. Bandy offered to give plaintiff the exclusive distributorship of this product and the use of the Bi-Vet label. It appears that la-

bels for such products must have the approval of an agency of the Federal Government, and that such approval of a new label takes a long time, whereas the Bi-Vet label was already approved. Plaintiff's officers stated that they were interested in taking on the line, but would have to have some samples for testing, and would want to approve the label before ordering. Price was discussed, and plaintiff's witnesses believe an exact price was agreed upon; but Mr. Bandy believed that he did not quote an exact price until plaintiff would indicate how much it would order.

The Court believes that all the witnesses were trying to be completely truthful, but had difficulty in being too sure about all the exact details of this initial conference because it was followed by telephone calls and letters firming up those details. After testing of the vaccine, approval of the label, and agreement on the exact price (at sometime), the plaintiff started ordering this product under this label from defendants.

The first question before the Court is whether this one business conference in Missouri at the inception of the business dealings between the parties constituted the transaction of any business within this state. Sec. 506.500 V.A.M.S. reads in part:

"Any * * * corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such * * * corporation * * * to the jurisdiction of the courts of this state as to any course of action arising from the doing of any of such acts.

(1) The transaction of any business within this state; * * * "

The precise question is whether this one conference within the state of Missouri subjects defendant corporations to jurisdiction of the courts of this state. The Missouri appellate courts have not yet ruled upon an analogous set of facts.

A most comprehensive annotation on the decisions predicating in personam jurisdiction over non-residents and foreign corporations upon the doing of "any" act or transacting "any" business within the state is found in 27 A.L. R.3d at page 397. This summary reveals that the trend of the opinions is to construe most liberally for the plaintiff the jurisdictional "any" transaction statutes and to uphold the jurisdiction of the court of plaintiff's residence in a suit arising or growing out of such transaction, directly or indirectly. Electronic Mfg. Corp. v. Trion, Inc., 205 F. Supp. 842 (D.C.Ind.1962).

The case of National Bank of America v. Calhoun, 253 F.Supp. 346, (D.C.Kansas, 1966), decided under a "transaction of any business" statute, contains this language which is particularly applicable to the case before this court:

"It is fair to conclude that the Kansas legislature chose not to fix precise guidelines, as other states have done, so as to draw within the jurisdictional reach of the Kansas courts only contracts made within the state, or made in the state or to be performed in whole or in part by either party in the state. Instead, the test is whether or not there was 'the transaction of any business within the state'. Even though the last act marking the formal execution of the contract may not have occurred within Kansas, the statutory test may be satisfied by a showing of other purposeful acts performed by defendant in Kansas in relation to the contract, even though such acts were preliminary or subsequent to its execution."

In the instant case it is apparent the business conference between the representatives of the parties which took place was the transaction of business within this state which was preliminary to the execution of a contract between the parties out of which this suit directly arose.

Of course to sustain jurisdiction it must be determined that the defendant had such "minimum contacts" with the forum state that are required by due

process requirements (International Shoe Co. v. Washington 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945)), and to "render it consistent with 'traditional notions of fair play and substantial justice' that he be compelled to defend himself". Slivka v. Hackley, 418 S.W.2d 89 (Mo.Sup.1967).

The case of Electro-Craft Corporation v. Maxwell Electronics Corporation, 417 F.2d 365 (8 Cir., 1969) contains an exhaustive discussion of the due process question. Although the action was brought under a Minnesota long-arm statute different in nature than the Missouri statute, the same due process test is applicable (International Shoe Co. Case, *supra*).

In the Electro-Craft case the Court laid down five factors to be considered: (1) The nature and quality of the contacts with the forum state; (2) the quantity of contacts with the forum state; (3) the relation of the course of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties.

Under points (1) and (2) the Court considered the following facts:

(a) The defendant purposely availed itself of the privilege of doing business with a Minnesota resident by entering into a transaction having an impact on the commerce of that state. (The instant case meets this test).

(b) While the plaintiff initiated negotiations the defendant then actively participated in them. (Certainly the instant case meets this test).

(c) While the contract was consummated in Texas, contractual. consequences were reasonably anticipated in Minnesota. (Defendant contends consummation in Texas, a fact denied by plaintiff's; but, under defendant's theory this test is met). .

(d) The equipment was shipped F.O. B. Texas, but defendant knew that the equipment was being shipped directly to a Minnesota resident without passing through an intervening dealer. (No question but that defendant had this knowledge in instant case).

(e) Even though defendant arranged for payment in Texas, he could have used the Minnesota courts to obtain payment. (True in this case).

(f) The defendant made full use of the arteries of interstate commerce to complete the contract, i. e., interstate mail, telephone and trucking facilities. (True again).

(g) The transaction was a significant one involving the sale of shipments of 278 units over a period of twenty-one days. The value of the units exceeded $132,000.00. (In this case the value of the goods shipped exceeded $150,000.00, and the transaction meets the test of significance).

Under point three (3) this case meets the test that the cause of action arose out of defendants' contacts with the resident of this state.

Under points four (4) and five (5) we feel that the interest in the State of Missouri in providing a forum for its residents is obvious, as stated in the Minnesota case. Affidavits filed by the parties are not convincing that plaintiff's choice of this forum should be disturbed because of inconvenience to defendants.

The number of witnesses and quantity of records that will of necessity have to be transported by one party or the other is about equal, and plaintiff's choice of forum should not be disturbed except for compelling reasons.

What is said above disposes of defendants' motion for a transfer under 1404(a), *supra*.