STATE ex rel. PEOPLES BANK OF
BLOOMINGTON et al., Relators,

v.

Hon. Harry J. STUSSIE, Respondent.

No. 36492.

Missouri Court of Appeals,
St. Louis District,
Division Two.

May 4, 1976.

James M. Daly, St. Louis, for relators.

David R. Hess, Clayton, for respondent.

KELLY, Judge.

Relator, Peoples Bank of Bloomington, an Illinois corporation, and Jack Snyder, a resident of the state of Illinois, have applied for

this Writ of Prohibition attacking the jurisdiction of respondent judge to proceed with a cause of action commenced against them in the Circuit Court of St. Louis County under § 506.500.1[1] RSMo 1969, the Missouri Long Arm Statute. We issued our preliminary writ, respondent filed his return and relators their Reply after which the cause was argued and taken as submitted.

This application for Writ of Prohibition has its genesis in a two count petition filed in the Circuit Court of St. Louis County by the Hess Construction Co., a Missouri corporation, with its principal place of business in St. Louis County, against Peoples Bank of Bloomington, a banking institution organized under the laws of Illinois and with its principal place of business in Bloomington, Illinois, and Jack Snyder, also an Illinois resident. Jurisdiction over the defendants was alleged to be pursuant to the provisions of § 506.500.1[1] RSMo 1969 in that both defendants and their agent, Robert Cushman, engaged in the transaction of business within the state of Missouri. Service was obtained on the defendants in Illinois and they thereafter filed their joint Motion to Quash Summons and Return of Service and to Dismiss on the grounds that they were not subject to the jurisdiction of the court because they did not transact business in the state of Missouri within the meaning of § 506.500.1[1] RSMo 1969. After an evidentiary hearing on this motion the respondent indicated to counsel for the parties that he intended to deny or overrule Relators' Motions and they thereupon made application for this Writ.

The sole issue in this case is whether the defendants transacted business in this state so as to submit themselves to the jurisdiction of the St. Louis County Circuit Court. We conclude that we cannot in this proceeding conclude that the trial court has no jurisdiction or will exceed its jurisdiction by proceeding with the cause and thereupon quash the preliminary writ heretofore issued.

Count I of Plaintiff's Petition alleges as its cause of action that the defendants acting through their agent, Robert Cushman, met with plaintiff's officers and representatives in St. Louis County on numerous occasions and discussed the merits of a proposed shopping center development in Bloomington, Illinois; that their discussions culminated in an agreement entered into between plaintiff and the Bank, as the defendant, Peoples Bank of Bloomington, shall hereinafter be identified, entitled "Option" wherein plaintiff was granted an option for six months to enter into a lease agreement with defendant Bank as the trustee of certain real estate under McLean County Land Trust No. D–161 for the purpose of constructing a shopping center. That at the time of the execution of the option's agreement with the Bank plaintiff paid to the Bank a consideration of $10,000.00, which sum was to be refunded to the plaintiff if the Bank did not secure a rezoning of the tract of land by the proper authorities of Normal, Illinois, for the construction of a shopping center, including certain businesses, including among others, a cinema, a drive-in bank, gasoline station, fast food drive-in restaurant, motel, etc., within whose boundaries and jurisdiction the land to be developed into a shopping center is situate. That the requisite planned development was never approved by the Town authorities, and although plaintiff's officers have met with the defendants in an effort to satisfy the conditions and requirements of the Town for approval of the planned development, approval has not been granted. That plaintiff has requested the refund of its $10,000.00 but the defendants have refused to return it to plaintiff. Plaintiff prays judgment against defendants for $10,000.00 plus interests and its cost.

Count II of plaintiff's petition realleges and incorporates by reference those portions of Count I relative to the parties, their relationships, the Option agreement and payment of consideration of $10,000.00 to the Bank. It is further alleged that at the time the option agreement was entered into defendant Snyder made certain misrepresentations of material facts and omitted to

inform plaintiff of certain material facts existing at the time of the execution of the option agreement. That in soliciting plaintiff to deliver the consideration for the option agreement to the Bank, for his use and benefit, Snyder, and the Bank, through him, made certain untrue statements and misrepresentations concerning Snyder's political influence whereby he had arranged for the construction of a drainage ditch, and that plaintiff would bear no cost for the widening of a roadway adjacent to the area to be developed. That Snyder omitted telling plaintiff that the Town had requested an ore company to eliminate two curb cuts at one of its filling station locations in the vicinity and that the Town required a drainage tube extension for 700 feet to an adjacent parcel of property. That believing and relying on the misrepresentations made to it, the corporation paid the consideration for the option agreement, whereas, had it known the true state of facts it would not have paid over the money. Plaintiff seeks recovery of the $10,000.00 consideration for the option agreement, $6,000.00 paid to its leasing agent as salary, and $5,000.00 architectural fee, a total of $21,000.00 actual damages and $100,000.00 punitive damages against the named defendants.

The evidence at the hearing on the Motion presented by the defendants consisted in affidavits of Mr. Snyder, one of the defendants, Owen J. Mair, a trust officer of the Bank and of Robert Cushman, the alleged agent of the defendants. Mr. Snyder and Mr. Cushman testified in person at the hearing and Mr. Jerry D. Gummere, vice-president of the Bank, also testified for the defendants. Plaintiff's evidence consisted of the testimony of Raymond Tenholder, a real estate appraiser in the employment of the Mercantile Bank in St. Louis. Documentary evidence consisting of (1) a carbon copy of a letter from Mr. Tenholder to Mr. Snyder dated November 9, 1972, (2) a carbon copy of a letter from Mr. Tenholder to Mr. Snyder dated December 11, 1972, (3) a copy of a contract between Mr. Cushman and Mr. Snyder dated October 27, 1972, (4) a lease plan prepared by Mr. Cushman dated November, 1972, (5) the option agreement between plaintiff and the Bank, and (6) a letter from Mr. Cushman to Mr. Tenholder dated December 13, 1972, also was introduced into the record.

The question for decision here is whether the evidence in this record is sufficient to prove, as a matter of law that the defendants had sufficient contacts with the state of Missouri to subject them to the long arm statute in this cause of action pleaded by plaintiff. The trial court decided there was.

Because of the result we have reached in this matter we deem it unnecessary to review in depth defendants' evidence other than to state that both defendants deny any contacts with the state of Missouri other than by a couple of telephone conversations and a letter or two and both deny that Mr. Cushman was their agent. However, the evidence viewed most favorably from respondent's viewpoint is that the Bank was Trustee of a tract of land situated in Normal, Illinois, in a trust identified as "McLean County Land Trust D–161," of which defendant Jack Snyder was the beneficiary. This tract of land, consisting of approximately 40 acres, is located at the northwest corner of the intersection of Main Street (U.S. 51) and Raab Road. Desirous of developing 200,000 square feet of this tract into a mall-type shopping center. Mr. Snyder contracted with Mr. Cushman on October 27, 1972, to "develop" this property into a shopping center to be known as "Normal Mall." By the terms of this agreement Mr. Cushman was appointed the "exclusive leasing agent and/or sales agent, for the shopping center" and was given "jurisdiction over all leasing and sales including leasing or sales of lease-offer or sell-offer" subject to approval and acceptance by Mr. Snyder. The contract term was for six (6) months, and was renewable for another six month term.

Raymond Tenholder, sometime in 1972, was in Bloomington, Illinois, conducting some business with the defendant Bank, and during the course of that business he

met with Mr. Gummere, vice-president of the Bank. In a conversation between these men, some mention was made relative to the need for a shopping center in Bloomington and Mr. Tenholder indicated to Mr. Gummere that he might know some people who would be interested in entering into some type of a development. At some later date—when the record does not reveal—but sometime prior to November 9, 1972, Mr. Gummere furnished the name of Mr. Snyder as the party in "control" of a site which might be developed for such purpose. On November 9, 1972, Mr. Tenholder wrote to Mr. Snyder informing him of this and asking him if he was "interested in selling the property or possibly participating with a St. Louis developer in such a venture" to forward the information on the site. Mr. Snyder responded to this letter by telephone call and advised Mr. Tenholder that he would have to talk with Mr. Cushman who was his representative in this matter. Mr. Snyder gave Mr. Tenholder the address and telephone number of Mr. Cushman in Champaign, Illinois. Shortly after their telephone conversation, Mr. Cushman called Mr. Tenholder and Mr. Cushman agreed to send Mr. Tenholder some information concerning the tract and the type of development Mr. Snyder was considering. On November 28, 1972, Mr. Tenholder, not having heard further from Mr. Cushman, wrote another letter to Mr. Cushman, requesting the information he had been promised. Then, still having received no information from Mr. Cushman, Mr. Tenholder wrote again to Mr. Snyder on December 11, 1972, advising him of this situation. By letter of December 13, 1972, Mr. Cushman wrote to Mr. Tenholder enclosing a data sheet and "lease plan # 1" for the proposed shopping center and suggesting that after Mr. Tenholder had a chance to review the information with his clients in St. Louis a meeting be arranged in Bloomington with Mr. Snyder to determine if there was any mutual interest.

On January 29, 1973, Mr. Gummere wrote to Mr. Tenholder on bank stationery that after he had talked with Mr. Tenholder by telephone on January 26th, he had had an opportunity to talk with Mr. Snyder about this tract of land. He pointed out that Mr. Snyder had the contract with Cushman but advised Mr. Tenholder that he felt Mr. Snyder would entertain a long-term subordinated land lease with Mr. Tenholder's clients or joining together with them using the land and obtain an interest in the shopping center. A third alternative—outright sale— was also mentioned, although Mr. Gummere was not optimistic as to this alternative. He further advised Mr. Tenholder that he thought it would be worth Mr. Tenholder's while to again contact Snyder at his earliest opportunity because Mr. Snyder might be leaving for Florida. This letter was signed:

"Peoples Bank of Bloomington
/s/ Jerry D. Gummere
JERRY D. GUMMERE
Vice-President."

After receipt of this letter of December 11, 1972, Mr. Tenholder and Mr. Cushman had two or three telephone conversations in an attempt to set up a meeting between Mr. Snyder and Mr. Tenholder's "contacts in St. Louis." (At this point in the dealings Mr. Tenholder had not as yet revealed to Mr. Cushman or Mr. Snyder who his contacts in St. Louis were). On March 11, 1973, Mr. Tenholder and John Hess, one of plaintiff's officers, met with Mr. Snyder at the site in Normal, Illinois, and at that time indicated they were interested in acquiring the site. Mr. Snyder advised them that he could not deal directly with them because of his contract with Mr. Cushman. After this meeting Mr. Snyder had his auditor contact John Hess and David Hess, both officers of plaintiff, for the purpose of inquiring into their financial status and to run a check to determine what kind of people they were dealing with.

On March 28, 1973, Mr. Cushman met with Mr. Tenholder, David Hess, John Hess and Marvin Ginsberg, an architect, at a restaurant in St. Louis County. Although Mr. Cushman denied that the purpose for this meeting was so that he could obtain a leasing agent contract with plaintiff in the

event plaintiff purchased or leased the tract, and that he was not then acting as Mr. Snyder's agent, there is other evidence that Mr. Cushman did present himself as a representative of Mr. Snyder at this meeting, that there was a discussion of dollars— although perhaps no specific amounts— about leases and purchase price, and the possibility of plaintiff buying or leasing the land from Snyder.

On April 16, 1973, Mr. Cushman came to the home of David Hess, Sr., in Clayton, St. Louis County, Missouri, and there met with David Hess, Jr., and John Hess. They went from the Hess' home to a department store in St. Louis County where they met with several of the principals of the department store business to discuss whether they had any interest in locating a store in the shopping center.

On May 1, 1973, plaintiff and the Bank executed the "Option" agreement in Bloomington, Illinois. Mr. Snyder was not a signatory to this contract by means of which plaintiff delivered to the Bank the $10,000.00 it seeks to recover in this action.

On the same day the Option contract was signed, but after its execution, Mr. Cushman and plaintiff also entered into an agreement whereby Mr. Cushman was employed as plaintiff's leasing agent for the proposed shopping center.

In reaching a decision in this case we must decide whether the facts are sufficient to support a finding by the trial court that the defendants had sufficient contacts with the forum state—here Missouri—to satisfy due process requirements. *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *American Hoechst Corp. v. Bandy Laboratories, Inc.*, 332 F.Supp. 241 (W.D.Mo.1970). In resolving this question the following factors may be considered: 1) the nature and quality of the contacts with the forum state, 2) the quantity of contacts with the forum state, 3) the relation of the cause of action to the contacts, 4) the interest of the forum state in providing a forum for its residents, and

5) the convenience of the parties. *American Hoechst Corp. v. Bandy Laboratories*, supra, l.c. 244, *J. F. Pritchard & Co. v. Dow Chemical of Canada, Ltd.*, 331 F.Supp. 1215, 1218[1] (W.D.Mo.1971).

In *American Hoechst Corp.*, supra, the only direct contact with the state of Missouri was a business conference at the inception of the business dealings between the parties followed by telephone calls and letters firming up the details, forwarding to plaintiff of some samples of the vaccine which it tested and then a series of orders and deliveries of same to the plaintiff, and long arm jurisdiction under the transaction of business clause of the statute was upheld. See also the *J. F. Pritchard Co.* case, supra.

Defendant Bank argues however, that the sole and only involvement of the Bank is that as a Trustee under an Illinois land trust, it holds legal title to the land which was the subject of the option agreement, and, except for the letter of Mr. Gummere of January 29, 1973, to Mr. Tenholder in St. Louis, it had no contacts with the forum state. It argues, citing *Desert Palace, Inc. v. Salisbury, et al,* 401 F.3d 320, 323[1] (7th Cir., 1968) as authority for said argument: "The sending of a letter does not *necessarily* constitute the transaction of business." (Emphasis supplied). We have no argument with this general statement, but we conclude that it is inappropriate under the facts of this case.

The instrument by which the Illinois land trust was created is not in evidence. However, the Bank is admittedly the Trustee under an "Illinois Land Trust" and as such has both the legal and equitable title to the tract of land which is the subject of the option agreement and the basis for plaintiff's cause of action. It is a signatory to the contract and the recipient of the consideration for the option agreement which plaintiff seeks to recover in this lawsuit. Mr. Snyder, admittedly the beneficiary of the trust, has a personal property interest therein, with the power to direct or control the trustee in dealing with the title, and he

also has the exclusive control of the management, operation, renting and selling of the trust res, together with the exclusive right to the earnings, avails and proceeds of said property. S.H.A. Ch. 298, § 8.31, *Levine v. Pascal*, 94 Ill.App.2d 43, 50[1], 236 N.E.2d 425 (1968).

With these principles in mind, we are also cognizant that a hearing on a motion to quash service of this kind is limited to an evaluation of relators' contacts with the forum state and a prima facie showing that acts contemplated by the statute involved took place. A trial on the merits is not required. The question of whether plaintiff could establish the required minimum contacts required to subject foreigners to the jurisdiction of the court under this statute is, in the first instance, to be determined by the trial court. *State ex rel. Deere and Company v. Pinnell*, 454 S.W.2d 889, 893[1–4] (Mo. banc 1970).

We have concluded that there were sufficient minimum contacts with this state by Mr. Snyder through his agent, Cushman, to support the trial court's finding of a prima facie showing of a transaction or transactions culminating in a contract of which Mr. Snyder was a beneficiary and which was brought to fruition through the efforts of his agent and himself.

We also hold that there is a sufficient prima facie showing through the relationships of the Bank and Mr. Snyder by way of the Illinois Land Trust and their respective rights and interests thereunder, that each served to benefit by the transaction which brought about the option agreement and by accepting these benefits which were the direct result of the contacts of Mr. Cushman with the state of Missouri, the Bank became subject to the service under the provisions of § 506.500 RSMo 1969.

The preliminary writ heretofore issued is hereby ordered quashed.

CLEMENS, P. J., and STEWART, J., concur.