CHARLES E. PEARCE, Appellant, *v.* CHARLES A. SPALDING ET AL., Respondents.

May 2, 1882.

The proprietor of a theatre who advertises the price of reserved seats during a certain period, and that the sale of seats will begin at a given hour, is not bound to sell any chosen seat for the entire period to the person who first presents himself and tenders the price of it.

APPEAL from the St. Louis Circuit Court, ADAMS, J.
*Affirmed.*
W. H. H. RUSSELL, for the appellant.
WICKHAM & ROBERTSON, for the respondent.

BAKEWELL, J., delivered the opinion of the court.
The petition in this case alleges, that defendant Spalding is the proprietor of the Olympic Theatre in St. Louis, and that defendant Mapleson is manager of an operatic combination known as "Her Majesty's Opera Company," and that Spalding was proprietor and Mapleson was manager, as aforesaid, at the time of the grievances complained of.

The petition, which is long, then makes, in substance, the following allegations : —

On February 4, 1881, and for some days before and after that date, defendants caused an advertisement to be published in the St. Louis newspapers, as follows : —

" OLYMPIC THEATRE — OPERA — SPECIAL NOTICE. — The season sale of seats for her majesty's opera will open at the box-office of the theatre on Monday morning, February 7th, at nine o'clock, and continue February 8th.   *Repertoire:* Monday, February 14th, ' La Sonnambula ; ' Tuesday, February 15th, ' Carmen ; ' Wednesday, February 16th, ' Lohengrin ; ' Thursday, February 17th, ' Martha ; ' Friday, February 18th, ' Aida ; ' matinee, February 19th, ' Lucie di Lammermoor ; ' Saturday night, February 19th, ' Don Giovanni.'   *Prices:* Parquette and dress circle, $3 ; family circle, $2 ; general admission to family circle, $1 ; gallery, fifty cents."

Afterwards, on February 7, 1881, and for several days before and after, they published a further advertisement, which is set out.   This advertisement is headed : " OLYMPIC THEATRE — OPERA. — Her Majesty's Opera Company. For one week only.   *Reportoire.*"   Then follow the days of the week, as in the last advertisement, with the name of each opera and of the performers, and the part which each one is to play, in each opera, on each day.   Then follow the prices, as in the last advertisement, and the following concluding sentence : " The season sale of reserved seats will open at the box-office of the theatre, to-morrow (Monday) morning, February 7th, at nine o'clock, and continue Tuesday."

The petition then alleges, that, by said advertisements, defendants led plaintiff and other citizens of St. Louis to believe that, if he or they would be at the box-office of the theatre, at the day and hour named, he or they would then have the right and privelege, as the first person or persons present at the opening of the sale of seats, of selecting and

purchasing any seat for such performance; and that the person first applying would have the first choice; that, relying on these advertisements, and desiring to secure desirable seats, in consideration of these promises of defendants, plaintiff left his home at seven o'clock in the morning of February 7, 1881 (which, he says, was an unusual hour), and was, at nine o'clock of that day, the first person at the box-office when it was opened, and then selected seats 675, 677, 679, and 681, of the front row in the dress circle of the theatre, and tendered $84 for these seats, — that being the price charged for them, — and demanded tickets for these seats, which were refused; that these tickets were then in the charge of the agent of defendants at the box-office, and were afterwards sold by defendants to other persons, whereby plaintiff has been deprived of the use of these seats for those performances, and of his rights under the alleged contract. Plaintiff asks damages in the sum of $1,000.

To this petition, a demurrer was interposed, on the ground that the petition does not set forth facts sufficient to constitute a cause of action. The demurrer was sustained, and there was judgment for defendants, plaintiff declining further to plead.

We think the demurrer was properly sustained. Defendants advertised to sell reserved seats; but they did not advertise that the first applicant should have his choice of any seats in the parquette at $3 for each entertainment; nor, that he should have numbers 675, 677, 679, and 681; nor, that he should have a license to use any seat during the performance for seven consecutive entertainments. By no fair construction, can any such meaning be got out of the language of the advertisements. Suppose a man, wishing to ruin the house, or to forestal the entertainment, or from any motive, good or bad, had tendered to the box-keeper the price of every seat in the parquette, for every entertainment, at $3 per seat, must he have accepted it? Why so?

Theatres are not necessities of life, and the proprietors of them may manage their business in their own way. If that way is unfair or unpopular, they will suffer in diminished receipts. *Clifford* v. *Brandon*, 2 Camp. 358–368.

But suppose that defendants had offered to plaintiff, in express terms, his choice of seats, provided he were first at the box-office at nine o'clock on February 7th, and, by extraordinary exertions, he had got there at that hour, and the defendants, out of mere caprice, had determined to close the house, or to throw it open to the public, or to hold a prayer-meeting in it during the week advertised for the opera; to what damages would plaintiff have been entitled for the false representation? Clearly he would have been entitled to no damages except for some loss that could be estimated by a money standard. He might recover, perhaps, for loss of time, and for car-hire. He could recover nothing, we think, for the mental anguish occasioned by not hearing "Fra Diavolo" or "Lucie di Lammermoor," any more than he could have recovered for any agonies that he might possibly have endured had he been present at the opera, and had the music been so excruciatingly bad that any intervals of silence would have come like so many poultices, " to heal the wounds of sound." The petition does not allege that plaintiff suffered any loss that can be estimated by money. It says nothing as to expenses, or as to the value of his time.

It has been held, indeed, that where one who has actually purchased his ticket to the theatre, no matter what his musical tastes may be, or what delight he may anticipate, is prevented from entering by the management, with no rudeness or unnecessary force, he cannot maintain an action of tort for the exclusion; and that his recovery must be upon the contract; and the measure of damages is the money paid for the ticket and all actual legal damages sustained by the breach of contract. *McCrea* v. *Marsh*, 12 Gray, 211.

The judgment is affirmed. All the judges concur.