## CRAFT v ELDER & JOHNSTON CO.

Ohio Appeals, 2nd Dist, Montgomery Co

No 1680. Decided July 14, 1941

Myers, Mills & Kelley, Dayton, for plaintiff-appellant.

Marshall, Harlan & Marshall, Dayton, for defendant-appellee.

## OPINION

By BARNES, J.

The above entitled cause is now being determined as an error proceeding by reason of plaintiff's appeal on questions of law from the judgment of the Court of Common Pleas of Montgomery County. Ohio.

On or about January 31, 1940, the defendant, The Elder & Johnston Company, carried an advertisement in the Dayton Shopping News, an offer for sale of a certain all electric sewing machine for the sum of $26.00 as a "Thursday Only Special". Plaintiff in her petition, after certain formal allegations, sets out the substance of the above advertisement carried by defendant in the Dayton Shopping News. She further alleges that the above publication is an advertising paper distributed in Montgomery County and throughout the city of Dayton; that on Thursday, February 1, 1940, she tendered to the defendant company $26.00 in payment for one of the machines offered in the advertisement, but that defendant refused to fulfill the offer and has continued to so refuse. The petition further alleges that the value of the machine offered was $175.00 and she asks damages in the sum of $149.00 plus interest from February 1, 1940.

Defendant interposed a general demurrer which was overruled. Thereupon defendant filed an answer and after certain admissions of purely formal allegations of the petition along with an admission that the Dayton Shopping News was an advertising paper distributed in Montgomery County and throughout the city of Dayton, then denies each and every allegation contained in the petition not previously admitted.

Following the joinder of issues, one branch of the case was submitted to the court by agreement of the parties. This agreement was carried into an entry approved by all counsel of record and reads as follows omitting the formal parts,

"By agreement of the parties this case is submitted to the court for determination solely of the question as to whether the advertisement referred to in the petition of plaintiff constituted an offer.

Further, by agreement of the parties, a copy of page 9 of the Dayton Shopping News for Thursday, February 1, 1940, is attached to this entry and made a part of the record in this case, and the advertisement appearing in the lower left hand corner of said page is stipulated and agreed to be the same advertisement as that referred to in plaintiff's petition."

The particular advertisement set forth on page 9 of the publication can not be reproduced in this opinion, but may be described as containing a cut of the machine and other printed matter including the price of $26.00 and all conforming substantially to the allegations of the petition.

The trial court dismissed plaintiff's petition as evidenced by a journal entry, the pertinent portion of which reads as follows:

"Upon consideration the court finds that said advertisement was not an offer which could be accepted by plaintiff to form a contract, and this case is therefore dismissed with prejudice to a new action, at costs of plaintiff."

Within statutory time plaintiff filed notice of appeal on questions of law and thus lodged the case in our court. Counsel for the respective parties have

filed briefs presenting their respective theories with citation of authorities.

It seems to us that this case may easily be determined on well recognized elementary principles. The first question to be determined is the proper characterization to be given to defendant's advertisement in the Shopping News. It was not an offer made to any specific person but was made to the public generally. Thereby it would be properly designated as a unilateral offer and not being supported by any consideration could be withdrawn at will and without notice. This would be true because no contractual relations of any character existed between the defendant company and any other person.

As supporting authority, we refer to **Vol. 9, O. Jur., page 257, §23,**

"In the absence of a consideration, an offer may be withdrawn at any time before acceptance."

This part of the text is built from numerous Ohio cases cited under Note 7. In the cases cited under this Note 7. it will be found that none of the cases were predicated upon a unilateral offer made to the public generally under an advertisement. In all instances, the negotiations were between designated parties. The words "before acceptance" in the above quotation from Ohio Jurisprudence can have no significance in the instant case for the reason that no contractual relation of any kind existed between the plaintiff and defendant. Plaintiff's tendering of the money and demanding the article advertised would not create a contractual relation. Defendant's refusal to deliver the electric sewing machine would constitute in law a withdrawal of a unilateral offer.

It is argued that an offer can only be withdrawn where notice is given prior to the acceptance. This is true where the negotiations have advanced to the status of, at least, a unilateral contract. We distinguish between a unilateral offer and a unilateral contract.

There are instances where unilateral offers through advertisements may create contractual relations with members of the public, but these instances involve special circumstances.

"The most frequent case in which an advertisement has been construed as an offer in the technical sense, involves a published offer of a reward for the furnishing of certain information. the return of particular property, or the doing of a certain act. In such case all that is necessary to confer the benefit demanded by the offeror is performance of the required act. Such offers, of course, are unilateral contracts, and principles of unjust enrichment alone would prevent the offeror from refusing to perform his promise upon the doing of the act." 6 R. C. L. p. 607, paragraph 30.

Furthermore, conditions sometimes arise where an offer is made through an advertisement and a customer procures the article without notice of the withdrawal of the offer and in such instances the advertiser will be held to his offer, but it must be noted that in these cases the relations of the parties have progressed to a consummated deal.

A case promulgating the above principle is that of **Arnold v Phillips, 1 Ohio Decision Reprint 448.** This case originated in Montgomery County and was decided by the Supreme Court, Wood, C. J. delivering the opinion. The Arnolds advertised in the Western Empire. a paper published in the city of Dayton, as follows,

"St. Clair Money—Notes of the above bank taken at par for goods at Arnolds—corner of Main and New Market Streets."

Phillips having seen the advertisement went to Arnold's store and there ordered merchandise. Nothing was said by either party how or in what funds the goods were to be paid for. The goods being selected and laid aside, Phillips left the store and Arnold sent the goods to Phillip's store with in-

structions not to take St. Clair bills. The clerk left the goods at the store of Phillips without communicating the instructions and returned to the store of Arnold, who sent him back in a few minutes to tell Phillips that he, Arnold would not take St. Clair money for the goods,—must have good money or return the goods—which Arnold's clerk communicated to clerk of Phillips, Phillips being absent as well as when the clerk first went there with the goods. Phillips had on hand $100 of the St. Clair bills, which were worth from twenty-five to forty per cent on their numerical value. In the afternoon of the same day, Phillips offered and tendered to Arnold in that kind of bills the price of the goods, which A. refused to receive. The tender was kept up, and the bills tendered were brought into court for the plaintiff. Wood, C. J. delivering the opinion, among other things, states the following:

"That the proposition was general and indefinite in its terms as to time, and must be considered outstanding until publicly withdrawn, or unless notice that it had been withdrawn was given to each individual purchaser; that the proposition being to the public, any one had a right to accept it; that Phillips having seen the advertisement, and having purchased goods on the faith of it, the contract to receive payment in St. Clair money was complete, and could not be receded from the moment the goods were delivered: that the delivery of the goods was complete when they were left at the store of Phillips by Arnold's clerk, and that the fact of the clerk's being instructed by his principal not to receive St. Clair money in payment, could not affect the rights of the parties unless those instructions were communicated to Phillips before, or at the time of the delivery."

The instant case is to be distinguished in that the electric sewing machine was not delivered and the fact that the defendant company refused to deliver the machine at the price of $26.00 was information that the unilateral offer was withdrawn.

We are referred to the case of **Meyer v Packard Company, 106 Oh St 328.** This case is interesting but readily distinguishable from the instant case. In the above "Meyer" case the motor company advertised rebuilt trucks as carrying the same guarantee as new trucks. Meyer purchased a truck and signed a written order therefor in which was contained the following,

"All promises, verbal understandings or agreements of any kind pertaining to this purchase, not specified herein, are hereby expressly waived."

The entire controversy revolved around the question as to whether or not the Packard Company could be held liable under the newspaper guaranties in the face of the writing between the parties. The lower court held against the plaintiff, Meyer, but the Supreme Court reversed and remanded determining among other things that it was a question for the jury to determine whether or not the truck was defective within the terms of such general ad and the written order. Again in this reported case the deal concerning the subject matter advertised was completed and the sole question for determination was how far the advertisement might be considered. The question is entirely dissimilar to the one in the instant case.

From the cases cited in connection with our own independent investigation, we find that very generally courts hold against liability under offers made through advertisements. Very generally in these cases the courts base their findings upon theories quite different from our analysis. With all due respect to the pronouncements of able jurists, we are not impressed with these theories.

We will now briefly make reference to some of the authorities.

"It is clear that in the absence of special circumstances an ordinary

newspaper advertisement is not an offer, but is an offer to negotiate—an offer to receive offers—or, as it is sometimes called, an offer to chaffer." Restatement of the Law of Contracts, Par. 25, Page 31.

Under the above paragraph the following illustration is given,

" 'A', a clothing merchant, advertises overcoats of a certain kind for sale at $50. This is not an offer but an invitation to the public to come and purchase."

"Thus, if goods are advertised for sale at a certain price, it is not an offer and no contract is formed by the statement of an intending purchaser that he will take a specified quantity of the goods at that price. The construction is rather favored that such an advertisement is a mere invitation to enter into a bargain rather than an offer. So a published price list is not an offer to sell the goods listed at the published price." Williston on Contracts, Revised Edition, Vol. 1, Par. 27, Page 54.

"The commonest example of offers meant to open negotiations and to call forth offers in the technical sense are advertisements, circulars and trade letters sent out by business houses. While it is possible that the offers made by such means may be in such form as to become contracts, they are often merely expressions of a willingness to negotiate." Page on the Law of Contracts, 2nd Edition, Vol. 1, Page 112, Par. 84.

"Business advertisements published in newspapers and circulars sent out by mail or distributed by hand stating that the advertiser has a certain quantity or quality of goods which he wants to dispose of at certain prices, are not offers which become contracts as soon as any person to whose notice they may come signifies his acceptance by notifying the other that he will take a certain quantity of them. They are merely invitations to all persons who may read them that the advertiser is ready to receive offers for the goods at the price stated." 13 Corpus Juris, 289, Par. 97.

"But generally a newspaper advertisement or circular couched in general language and proper to be sent to all persons interested in a particular trade or business, or a prospectus of a general or descriptive nature will be construed as an invitation to make an offer." 17 Corpus Juris Secundum, page 389, Par. 46, Column 2.

"Syllabus 1: A general advertisement in a newspaper for the sale of goods is a mere invitation to enter into a bargain and is not an offer. Syllabus 3: To consummate a contract of sale there must be a meeting of minds." Georgian Co. v Bloom, 27 Ga. Appellate 468, 108 S. E. 813.

We are also referred to the following:

Salisbury v Credit Service Inc., Superior Court of Delaware, 199 Atl. 674.

The Schenectady Stove Company v Holbrook et, 101 N. Y. 45.

Montgomery Ward & Company v Johnson, 209 Mass. 89, 95 N. E. 290.

We are constrained to the view that the trial court committed no prejudicial error in dismissing plaintiff's petition.

The judgment of the trial court will be affirmed and costs adjudged against the plaintiff-appellant.

Entry may be prepared in accordance with this opinion.

GEIGER, PJ. and HORNBECK, J., concur.