OSAGE HOMESTEAD, INCORPORATED, d/b/a St. Charles Drilling Company, Plaintiff-Respondent,

v.

John SUTPHIN, Individually and Semco Manufacturing, A Corporation, Defendants-Appellants.

No. 44521.

Missouri Court of Appeals, Eastern District, Division Four.

Aug. 16, 1983.

M.E. Stokes, Charles Bridges, St. Charles, for defendants-appellants.

Frederick W. Drakesmith, St. Charles, for plaintiff-respondent.

KELLY, Judge.

John Sutphin and SEMCO Manufacturing appeal from an order of the Circuit Court of St. Charles County setting aside its prior order setting aside a default judgment entered against both appellants on May 15, 1981, and reinstating the said default judgment. We reverse and remand with directions.

Appellants initial contention, and the dispositive issue, is that the trial court erred in reinstating the default judgment against them because there were not sufficient minimal contacts with the state of Missouri for personal service of process outside the state of Missouri, nor for the Circuit Court of St. Charles County to acquire in personam jurisdiction over them pursuant to the long-arm statute, §§ 506.500.1 and 506.510 RSMo 1978.[1]

The facts, as we ascertain them from the Petition, transcripts of testimony of the evidentiary hearings at the time of the granting of the default judgment and at the hearing on the motion of Osage Homestead, Inc. (hereinafter Osage) to set aside the Order of the Circuit Court of June 12, 1981, setting aside the default judgment of May 15, 1981, and affidavits in support of appellants' motions to set aside default judgment or, in the alternative, to quash service of process, are as follows.

Charles Chitwood, President of St. Charles Drilling Company,[2] whose offices

---

1. All statutory references are to RSMo 1978, unless otherwise identified.

2. Osage conducted its business under the name of St. Charles Drilling Company, a fictitious

are in Weldon Springs, Missouri, sometime in December, 1980, read an advertisement in the Water Well Journal, a trade publication, for the sale of a "Monitor M33a Pump rig, 1978, complete hydro and sandline 36′ mast, w/F250 Ford, 390 V8, 4 Spd. utility box—$8,950.00." This ad was read by Mr. Chitwood in his office in Weldon Springs, Missouri on December 18, 1980. The ad was by "SEMCO MFG., Lamar, Colorado," and included a telephone number; "303–336–4931."

Mr. Chitwood testified that he had two or three telephone conversations with Mr. Sutphin, but in his testimony he related only two such conversations. The first of these took place on or about December 18, 1980, when Mr. Chitwood called[3] SEMCO at the telephone number listed in the ad and had a conversation with Mr. Sutphin concerning the type of rig mentioned in the ad, its condition and the arrangements for delivery. He told Mr. Sutphin that St. Charles Drilling Company wanted to get the rig purchased before the end of the year. Mr. Chitwood also explained to Mr. Sutphin that his company did not have time to go to Colorado to inspect the rig, come back and make other arrangements for the purchase of the rig.

Mr. Sutphin told him that the body and truck were sound; that there was a dent in the right front hood, and a dent in the rear bumper of the truck and also affirmed that the Ford truck was a 1978 model with 40,-000 miles on it.

The next telephone conversation, the final one, took place "shortly before Christmas," with Mr. Sutphin, who was in Colorado. Mr. Chitwood arranged to send one of his men to Colorado with a cashier's check to pick up the rig and return it to St. Charles. A cashier's check of the First State Bank of St. Charles, payable to SEMCO, and dated December 16, 1980, in an amount of $8,950.00 was identified by Mr. Chitwood, as the check he said Mr. Sutphin instructed him was to be used to pay the purchase price for the rig.

One of Osage's drivers went to Lamar, Colorado, where the cashier's check was delivered to Mr. Sutphin and the driver took delivery of the truck, received an invoice and a Colorado Certificate of Title.[4] He returned to St. Charles with the rig without an odometer notification detailing the number of miles on the odometer of the truck at the time of the transfer of title for the Ford pick-up truck as mandated by the Motor Vehicle Information and Cost Savings Act, 15 U.S.C. §§ 1981–1989.

This action was instituted on April 2, 1981. In one count Mr. Sutphin was charged with failing to prepare and/or provide Osage with the odometer notification. It was further alleged that "Plaintiff has been frauded [sic] in the inducement of the sale of the motor vehicle …" The same allegations were directed against SEMCO in a separate count. Service was had on both Mr. Sutphin and SEMCO by a deputy sheriff of Prowers County, Colorado, at the offices of both appellants in Lamar, Colorado, on April 10, 1981, and when neither party responded a default judgment was entered against both of them in an amount of $73,976.37 on May 15, 1981.

Thereafter, on June 11, 1981, both appellants filed (1) a Special Entry of Appearance and Motion to Set Aside Default Judgment for Lack of Jurisdiction and to Quash Service of Process and (2) Alternative Motion of the Parties Named as Defendants to Set Aside Default Judgment or for a New Trial. These motions were supported by affidavits of Mr. Sutphin, George McLa-

---

name registered with the Secretary of State of Missouri as such.

3. Although Osage's petition alleged that it was Mr. Sutphin who *contacted* plaintiff through telephone communication for the purpose of entering into a contract to purchase the hoist and Ford pick-up truck, Mr. Chitwood's testimony is that it was he who contacted Mr. Sutphin by calling the telephone number of SEMCO in Colorado.

4. This Colorado Certificate of Title shows the Ford truck to be a 1973 model pick-up truck.

chlan,[5] a Colorado attorney, and Mary E. Claybrook, Mr. Sutphin's secretary.

According to Mr. Sutphin's affidavit he is the sole proprietor of a business known as SEMCO, located in Lamar, Colorado, and this business is not and never has been a corporation; that neither appellant transacts any business in Missouri, makes any contracts nor committed any torts in Missouri, nor contracts to insure any person, property or risk located within the state of Missouri.

On June 12, 1981, these motions of appellants were heard and the default judgment was set aside on the grounds there were not sufficient minimal contacts with Missouri for the court to acquire personal jurisdiction over appellants.

Osage filed a Motion for Rehearing (which is not in the record on appeal), and this motion was sustained, the order setting aside the default judgment of June 12, 1981, was set aside and held for naught, and the Motion to Set Aside the Default Judgment or for a new trial was denied on June 22, 1981. This appeal followed.

■ When the question of personal jurisdiction is raised in a Motion to Dismiss for Lack of Personal Jurisdiction, the plaintiff must establish a prima facie case for jurisdiction in order to withstand said motion. *State ex rel. Deere and Company v. Pinnell*, 454 S.W.2d 889, 893[2] (Mo. banc 1970). See also Casad, Jurisdiction in Civil Action, § 6.01[3][b], p. 6–6 (1983) and cases cited in footnote 18.

Respondent concedes that jurisdiction over the appellants is based upon the Missouri long-arm statute, § 506.500, in that appellants (1) transacted business in the state of Missouri or (2) made a contract within the state of Missouri.

Respondent, in support of its position that appellants transacted business in Missouri, argues that the advertisement in the Water Well Journal constitutes the transaction of business in Missouri because the magazine with appellants' advertisement therein was received in Missouri. To support this proposition it relies on *State ex Inf. Danforth v. Reader's Digest Assoc.*, 527 S.W.2d 355 (Mo. banc 1975).

We believe Danforth, supra, which involved two mailings to thousands of Missouri residents in a sweepstakes promotion of the non-resident defendant corporation does not stand for the proposition espoused by respondent. The Court in *Danforth*, 527 S.W.2d at 358 said: "This is not a case involving minimal contacts on a sporadic basis but a continuous business scheme involving potential obligations of citizens of this state." The opinion also quoted from *Reader's Digest Assoc. v. State ex rel. Conner*, 251 So.2d 552 at 556 (Fla.App., First Dist.1971): "We are not concerned here . . . with the 'mere mailing of magazines into Florida,' nor are we concerned with a single act on the part of the defendant. We are concerned with Reader's Digest invading the offices and homes of more than 10,000 Florida citizens, and at this stage of the pleadings, urging them to participate in an alleged lottery and purchase various goods and merchandise, such activities being contrary to the criminal and civil laws of Florida."

In Danforth, the publisher of the mailings was the defendant; such is not the case here. The court was also careful to point out that it was the massive mailings and promotional activity of the defendant that constituted the "transaction of any business" within the meaning of the statute.

■ We have been cited no Missouri authority to support respondent's contention that an advertisement in a magazine which comes into the hands of an officer of a corporation situated in Missouri constitutes the transaction of business in the state by the business organization running the ad in the magazine so that said advertiser is subject to personal service outside the state of Missouri pursuant to the provision of

---

**5.** Mr. McLachlan's affidavit attempted to explain why appellants did not file a timely answer or responsive pleading and Ms. Claybrook's to show that valid service was not had.

§ 506.500.1(1). Our research has revealed no Missouri case so holding.

In *Acme Equipment Co., Inc. v. Metro Auto Auction of Kansas City, Inc.,* 484 F.Supp. 219, 221[6] (W.D.Okl.1979) the action of a Missouri automobile auctioneer in mailing into Oklahoma circulars announcing upcoming automobile auctions in Missouri was held insufficient to bring the Missouri auctioneer within the long-arm jurisdiction of the Oklahoma court on the grounds he was transacting any business in Oklahoma.

And, in *Carbone v. Fort Erie Jockey Club, Ltd.,* 47 A.D.2d 337, 366 N.Y.S.2d 485, 487[2, 3] (Sup.Ct.1975) it was held that a Canadian corporation which owned and operated a horse-racing track in Canada was not by reason of engaging in advertising in New York by use of New York newspapers, radio, television and billboards transacting business in New York so as to subject it to jurisdiction under the New York long-arm statute.

The Kansas Court of Appeals, in *Odam v. Arthur Murray, Inc.* 5 Kan.App.2d 612, 621 P.2d 453, 458[5] (1980), reached a contrary result. However, Odam is distinguishable on the facts, because the Missouri franchisee in that case solicited plaintiff's personal involvement in the taking of dance lessons by personal telephone calls, advertised in Kansas City, Missouri newspapers, telephone directories, television and radio stations calculated to reach Kansas residents, and received substantial revenue from Kansas residents. These extensive sales promotional activities are absent in the case before us.

We hold, that the advertisement in the Water Well Journal, did not constitute the "transaction of business" within the state of Missouri for the purpose of personal service of process outside this state under § 506.500.1(1).

■ Respondent also contends that the two or three telephone conversations between Mr. Sutphin and Mr. Chitwood were conferences which led to the purchase of the drilling rig and pick-up truck and constitute the transaction of business sufficient to support long-arm jurisdiction in Missouri. We disagree.

From the record on appeal we discern that it was Mr. Chitwood, in Missouri, who initiated these phone calls to Mr. Sutphin in Colorado. Placing a telephone order from one state to another is not, alone, a sufficient basis for long-arm jurisdiction. *M & D Enterprises, Inc. v. H.C. Fournie, et al,* 600 S.W.2d 64, 68[5] (Mo.App.1980).

Respondent's reliance on *State ex rel. Farmland Industries, Inc. v. Elliott,* 560 S.W.2d 60 (Mo.App.1977), and *State ex rel. Peoples Bank v. Stussie,* 536 S.W.2d 934 (Mo.App.1976) is misplaced, because in Farmland the conferences in Missouri leading up to the contract were personally attended by the defendant and/or other representatives of the defendant on at least eight occasions. It was in this factual situation that the court said any one of the conferences would have constituted the transaction of business. Stussie is likewise distinguishable, because a representative of the non-resident Bank came into the state of Missouri on several occasions and engaged in a number of conferences with the officers and representatives of the resident corporation which led to an option to enter into a lease agreement with the Bank as trustee of certain real estate for the purpose of constructing a shopping center. There is nothing in the record showing that Mr. Sutphin, or anyone on his behalf, attended a conference in Missouri relative to the purchase of the rig and pick-up truck which is the subject of this action. We hold that these telephone conversations do not constitute the transaction of business.

Respondent argues that the contract was a Missouri contract, made in Missouri when Mr. Chitwood, as "offeree" accepted the offer of Mr. Sutphin, the "offeror," and therefore the court had jurisdiction pursuant to § 506.500.1(2). This is simply not so.

■ An advertisement for the sale of goods at a certain price may or may not constitute an offer the acceptance of which will consummate a contract. Whether it does depends upon the particular facts and circumstances in each case, the most impor-

tant factor being the intent of the advertiser. Other factors to be considered in deciding the question are the definiteness or certainty of the wording of the advertisement.

The general rule is that a newspaper advertisement in general language and proper to be sent to all persons interested in a particular trade or business will be construed to be an invitation to make an offer. 17 C.J.S. Contracts § 46, p. 694; 1 Corbin, Contracts § 25, p. 74 (1963). "Because advertisements published in newspapers and circulars sent out by mail or distributed by hand, stating that the advertiser has a certain quantity or quality of goods which he wants to dispose of at certain prices and on certain terms, are not offers which become contracts as soon as any person to whose notice they may come signifies his acceptance by notifying the other that he will take a certain quantity of them, but are ordinarily construed merely as an invitation for an offer for sale on the terms stated, which offer, when received may be accepted or rejected, and which, therefore, does not become a contract of sale until accepted by the seller, . . ." 77 C.J.S. Sales § 25(b) p. 634.

The advertisement in this case,[6] we believe, on its face, is one where neither the advertiser nor the reader of the advertisement understood that the reader was empowered to close the deal without further expression by Mr. Sutphin. Such advertisements are understood to be mere requests to consider and examine and negotiate; and no one can reasonably regard them otherwise unless the circumstances are exceptional and the words used are very plain and clear. 1 Corbin, Contracts, § 25, at p. 75 (1963). *Anderson et al. v. Board, etc. of Public Schools,* 122 Mo. 61, 27 S.W. 610, 611[1, 2] (1894); *Pearce v. Spalding,* 12 Mo.App. 141 (1882); *Craft v. Elder & Johnston Co.,* 38 N.E.2d 416 (Ohio App.1941); *Steinberg v. Chicago Medical School,* 69 Ill.2d 320, 13 Ill.Dec. 699, 371 N.E.2d 634,

639[9] (1977); *Geismar v. Abraham & Strauss,* 109 Misc.2d 495, 439 N.Y.S.2d 1005, 1006[2] (Dist.Ct.1981); *Lovett v. Frederick Loeser & Co.,* 124 Misc. 81, 207 N.Y.S. 753 (1924); *People v. Gimbel Bros. Inc.,* 202 Misc. 229, 115 N.Y.S.2d 857, 858[1] (1952).

It is clear that Mr. Chitwood construed the advertisement in this light and negotiated with Mr. Sutphin concerning the drilling rig and pick-up truck as well as the terms of payment. To constitute an offer sufficient to result in a contract, the offer must be so definite in its terms, or require such definite terms in its acceptance, that the promises and performances to be rendered by each party are reasonably certain. *Brown v. Childers,* 254 S.W.2d 275, 280[2] (Mo.App.1953). "Incompleteness of terms is one of the principal reasons why advertisements and price quotations are ordinarily not interpreted as offers." Restatement of Contracts, Second, § 33, Comment c, p. 93.

For these reasons we hold that Mr. Chitwood, as the agent for Osage, was the offeror, and. not, as it contends, the offeree, so that the contract for the purchase of the pick-up truck took place in Colorado when the appellants accepted Osage's offer to purchase the drilling rig with the pick-up truck on which it was installed. The place where the final act occurs which makes a binding contract is the place of contract. *Shady Valley Park & Pool, Inc. v. Dimmic,* 576 S.W.2d 579, 580[1] (Mo.App. 1979).

Respondent, therefore, has not made a prima facie showing that a contract was made within the state of Missouri to bring this action under § 506.500.1(2).

Respondent also argues that the Circuit Court of St. Charles County has in personam jurisdiction over appellants by reason of 15 U.S.C. Section 1989(b).

Respondent cite *Arnold v. Smith Motor Company,* 389 F.Supp. 1020 (N.D.Iowa 1974)

---

**6.** 1–MONITOR M33a PUMP rig, 1978, complete hydro. and sandline, 36′ mast, w/F250 Ford,

390 V8, 4 spd. utility box—$8,950.00.

and *Stephenson v. Jordan Volkswagen, Inc.,* 428 F.Supp. 195 (W.D.N.C.1977) as authority for establishing in personam jurisdiction in the Circuit Court of St. Charles County.

Both of these cases dealt with actions instituted under the Motor Vehicle Information and Cost Savings Act, 15 U.S.C. § 1989 in a United States District Court.

Arnold was concerned with a venue question in a federal district court in Iowa and Stephenson, with whether the corporate non-resident defendant in an action instituted in a federal district court in North Carolina had sufficient minimum contacts with the state so that in personam jurisdiction could be exercised over it under the North Carolina long-arm statute, and if so, whether venue under the provisions of 28 U.S.C. § 1391(b) was proper.

We entertain no doubt that in a proper case Missouri courts of original jurisdiction, as is the Circuit Court of St. Charles County, may exercise jurisdiction in actions based upon non-compliance with the requirements of 15 U.S.C. §§ 1981–1991. The Act provides that an action to enforce any liability for a violation of this kind "may be brought in a United States District Court without regard to the amount in controversy, or in any other court of competent jurisdiction . . . ." The phrase, "court of competent jurisdiction" has been construed to mean that state courts of general jurisdiction have subject matter jurisdiction in cases involving a violation of these statutes. *Freudenberg v. Harvey,* 364 F.Supp. 1087, 1090[2] (E.D.Pa.1973); *Wingate v. General Auto Parts Co.,* 40 F.Supp. 364, 365[1] (W.D. Mo.1941). Both of these cases were concerned with construction of the Fair Labor Standards Act of 1938, 29 U.S.C. § 216(b).

Respondent has not cited, nor has our research surfaced any case construing this phrase in the posture presented to us here. Our research has however, led us to a case under the Truth in Lending Act, 15 U.S.C. § 1601 et seq. wherein this phrase as found in § 1640(e) of that Act was held not to deal with service of process or in personam jurisdiction at all.

In *Bernard v. Richter's Jewelry Co., Inc.,* 53 F.R.D. 606, (S.D.N.Y.1971) Bernard, a New York resident, renewed a loan he had made with Richter, a Florida Corporation engaged in the business of making loans on jewelry, with its principal place of business in Miami, Florida. Richter was not qualified to do business in New York, had no office or agents or representatives or any property in New York and contended that it did no business there. The original loan had been made in Miami and when it came due, Richter, in Miami, telephoned and wrote Bernard in New York requesting a renewal of the loan. Bernard acceded to that request and Richter sent a renewal note and loan agreement to Bernard in New York by mail from Miami which Bernard signed in New York and returned by mail from New York to Richter in Miami.

Thereafter Bernard instituted suit in the United States District Court in New York alleging that the collateral security note and loan agreement renewing the loan did not set forth on its face certain terms of the loan as required by the Truth in Lending Act and Regulation Z issued thereunder by the Governors of the Federal Reserve System.

Summons and Complaint were served on Richter at its place of business in Miami by the United States Marshall and Richter moved to set aside service of process and to dismiss for lack of jurisdiction over the person, or, in the alternative, to dismiss for improper venue.

Bernard based jurisdiction solely on § 1640(e) of the Truth in Lending Act providing that "any action under this section may be brought in any United States District Court, or in any other court of competent jurisdiction, . . . ." He argued that this language authorized service of process in actions under the Act on a nationwide basis wherever the defendant might be found.

The court, in response to this argument, stated at p. 607: "There is no merit to this contention. Bernard appears to have confused the subject matter jurisdiction conferred on district courts by § 1640(e) with

*in person* jurisdiction. That section does not deal with service of process or in personam jurisdiction at all, and does not authorize service of process on this defendant in Miami in an action brought in this district."

The court held that what § 1604(e) does is to confer subject matter jurisdiction over an action brought under the Act, regardless of the amount in controversy, on any United States District Court, but that it does not authorize out-of-state service.

Because Bernard did not obtain service on Richter pursuant to any statute of the United States as provided for under Rule 4(e), Fed.R.Civ.P., and because Richter had not transacted any business in New York, personal service under the New York long-arm statute, N.Y.C.P.L. §§ 302(a)(1) and 313, was not a viable alternative to service under Rule 4(e) Fed.R.Civ.P. and in personam jurisdiction over Richter had not been obtained.

Osage too has confused subject matter jurisdiction conferred on "any court of competent jurisdiction" by 15 U.S.C. § 1989(b) with in personam jurisdiction. The Circuit Court of St. Charles County had subject matter jurisdiction over this action, but, as we have heretofore held, it had no in personam jurisdiction over either appellant because of the failure of Osage to make a prima facie showing that the non-resident appellants transacted any business or entered into a contract in Missouri so as to bring them under the long-arm statute, § 506.500.1(1).[7]

We hold that the Circuit Court of St. Charles County erred in denying appellant's Special Entry of Appearance and Motion to Set Aside Default Judgment for Lack of Jurisdiction and to Quash Service of Process. We reverse and remand the cause to that Court with directions to set aside its order of June 12, 1981, setting aside the default judgment of May 15, 1981. We further order that the Court enter an order sustaining appellants' Motion to Set Aside Default Judgment for Lack of Jurisdiction and to Quash Service of Process.[8]

Judgment reversed and remanded with directions.

PUDLOWSKI, P.J., and SMITH, J., concur.

---

7. Neither party to this appeal briefed nor argued whether a violation of the Motor Vehicle Information and Cost Savings Act, 15 U.S.C.A. § 1989, Section 409 is a tort within the long-arm statute; therefore, we do not reach this question.

8. Because of the result we have reached, we find it unnecessary to rule on the remaining Points Relied On presented by the appellants.