**Don L. WARNER, et al., Plaintiffs,**

v.

**GENERAL INSURANCE COMPANY OF AMERICA, et al., Defendants.**

No. 87–0800C(6).

United States District Court,
E.D. Missouri, E.D.

June 29, 1988.

Bryan, Cave, McPheeters & McRoberts, Gary T. Carr, Margaret W. Lane, St. Louis, Mo., for plaintiffs.

R. Lane Goddard, Asst. Atty. Gen., St. Louis, Mo., for intervenor, State of Mo.

H.O. Moline, Donald J. Mehan, Jr., Moline, Ottsen, Mauze, Leggat & Shostak, St. Louis, Mo., for defendant Titan Capital Corp.

James W. Erwin, Steven D. Graham, Thompson & Mitchell, St. Louis, Mo., for defendants Professional Services Corp., Primeline Advisory, Inc. and Donald Baxter.

George L. Fitzsimmons, Robert L. Jackstadt, Suelthaus & Kaplan, P.C., St. Louis, Mo., for defendant Eighty–Eighty Central Partners, Ltd.

## MEMORANDUM

GUNN, District Judge.

This matter is before the Court on defendant Banque Indosuez's motions to dismiss plaintiffs' first amended complaint and plaintiff-intervenor's complaint for lack of personal jurisdiction and improper venue, defendant Union Planters National Bank's motions to dismiss plaintiffs' first amended complaint and plaintiff-intervenor's complaint for lack of personal jurisdiction, and defendant General Insurance Company of America's motion to dismiss or to stay or to transfer.

Plaintiffs Don L. Warner and Patricia Ann Warner, both residents of the state of Missouri, bring the present action for declaratory and other relief pursuant to 28 U.S.C. § 2201 against various nonresident defendants in which they allege that their purchase of a limited partnership interest in defendant Eighty–Eighty Central Partners, Ltd. ("8080 Central") violated the Missouri Blue Sky Laws and consequently that a promissory note and a guaranty bond/indemnification agreement they executed in connection with their purchase are unenforceable. As plaintiffs' claims require this Court to construe the Missouri Blue Sky Laws, the state of Missouri was permitted to intervene as an additional party plaintiff.

Insofar as it is pertinent here the allegations giving rise to plaintiffs' first amended complaint and plaintiff-intervenor's complaint are as follows. Prior to June 1985, Vesteq Financial Corporation ("Vesteq") issued a private placement memorandum in which it offered for sale limited partnership interests in 8080 Central, a California limited partnership. The purpose of the offering was to finance the construction of a seventeen-story office complex in Dallas, Texas. In June 1985, and in reliance on Vesteq's private placement memorandum,

plaintiffs purchased a limited partnership unit in 8080 Central. In so doing, they executed certain subscription documents, including a subscription agreement, a promissory note for $54,000 made payable to 8080 Central, and a limited partnership guaranty bond/indemnification agreement between plaintiffs and General Insurance Company of America ("General Insurance").

As a result of the foregoing, General Insurance issued a bond on behalf of plaintiffs whereby it guaranteed payment of the promissory note. The promissory note was then assigned by 8080 Central to Banque Indosuez as collateral for a loan to finance the construction of the office complex. Banque Indosuez thereupon entered into a service agreement with Union Planters National Bank ("Union Planters") in which Union Planters agreed to act as a service agent with respect to the promissory note. Banque Indosuez is a banking corporation organized under the laws of the Republic of France with its prinicpal place of business in Paris, France; Union Planters is a banking corporation organized under the laws of the United States with its principal place of business in Memphis, Tennessee.

In April 1986, Vesteq informed plaintiffs that the 8080 Central offering failed to conform to the requirements of the Missouri Blue Sky Laws and notified them of their right to rescind the transaction and to receive restitution for the consideration they previously tendered to 8080 Central. Plaintiffs elected to rescind, and Vesteq subsequently returned to them some of the subscription documents, but failed to return either the promissory note or the guaranty bond/indemnification agreement. As a consequence, Union Planters has made demands on plaintiffs to make installment payments due under the promissory note. General Insurance, who claims to have made installment payments on the note to Banque Indosuez on behalf of plaintiffs, have likewise made demands on plaintiffs to make payments due it under the terms of the guaranty bond/indemnification agreement.[1] Plaintiffs have refused

---

1. Indeed, six days prior to the date plaintiffs' filed their original complaint, General Insur-

to accede to these demands and have requested the Court to declare their rights and obligations under the promissory note and guaranty bond/indemnification agreement. In addition, they have requested this Court to declare 8080 Central and certain broker-dealers and securities firms jointly and severably liable for any sums they may be required to pay on account of their investment in 8080 Central. They also seek their reasonable attorneys' fees in prosecuting this action.

In response to plaintiffs' first amended complaint and plaintiff-intervenor's complaint, Banque Indosuez has filed its motions to dismiss for lack of personal jurisdiction and improper venue, Union Planters has filed its motions to dismiss for lack of personal jurisdiction, and General Insurance has filed its motion to dismiss or to stay or to transfer. For the following reasons, the Court grants Banque Indosuez's and Union Planters' motions to dismiss for lack of personal jurisdiction[2] and denies General Insurance's motion to dismiss or to stay or to transfer.

### A. Banque Indosuez's and Union Planters' Motions to Dismiss for Lack of Personal Jurisdiction

■ In passing on a motion to dismiss for lack of personal jurisdiction over a non-resident defendant, a federal diversity court is required to engage in a two-step inquiry: first, whether the forum state committed one of the acts enumerated in the forum state's long-arm statute; and second, whether the exercise of personal jurisdiction over the defendant comports with the requirements of the due process clause of the fourteenth amendment. *The Land–O–Nod Co. v. Bassett Furniture Industries, Inc.*, 708 F.2d 1338, 1340 (8th Cir.1983); *Scullin Steel Co. v. National Ry. Utilization Corp.*, 676 F.2d 309, 312 (8th Cir.1982). Although the facts are viewed in the light most favorable to plaintiff, the plaintiff bears the burden of offering some evidence upon which a prima facie showing of jurisdiction may be said to exist. *Aaron Ferer & Sons v. Diversified Metals Corp.*, 564 F.2d 1211, 1215 (8th Cir. 1977) (citations omitted). If plaintiff makes a prima facie showing, the burden shifts to the moving party to show a lack of jurisdiction. *Wines v. Lake Havasu Boat Manufacturing, Inc.*, 846 F.2d 40, 41–42 (8th Cir.1988) (citation omitted).

Missouri's long-arm statute provides in pertinent part as follows:

1. Any person or firm, whether or not a citizen or resident of this state, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of such acts:

   (1) the transaction of any business within this state....

§ 506.500.1(1), R.S.Mo. (1986). The statute further provides that "only causes of action arising from acts enumerated in this section may be asserted against a defendant in an action in which jurisdiction over him is based upon this section." § 506.500.3, R.S.Mo. (1986). In construing the statute, the Missouri courts have uniformly held that it is intended to extend jurisdiction over non-resident defendants to the limits allowed under the due process clause of the fourteenth amendment. *See, e.g., State ex rel. Metal Service Center of Georgia, Inc. v. Gaertner*, 677 S.W.2d 325, 327 (Mo. banc 1984); *State ex rel. Deere & Co. v. Pinnell*, 454 S.W.2d 889, 892 (Mo. 1970).

■ The due process clause of the fourteenth amendment requires that a defendant have such "minimum contacts" with the forum that exercise of jurisdiction over it does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. State of Washington,*

---

ance filed suit against plaintiffs, as well as other investors in 8080 Central, in Washington state court to enforce the terms of the guaranty bond/indemnification agreement.

2. As the Court finds it does not have personal jurisdiction over Banque Indosuez, it finds that the issue as to whether venue is proper as to Bank Indosuez is now moot.

326 U.S. 310, 320, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945). The defendant's contacts with the forum must be sufficiently purposeful that it "should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). "In judging minimum contacts a court properly focuses on the relationship among the defendant, the forum, and the litigation." *Calder v. Jones,* 465 U.S. 783, 788, 104 S.Ct. 1482, 1486, 79 L.Ed.2d 804 (1984).

In the Eighth Circuit the "minimum contacts" standard has evolved into a consideration of five factors: (1) the nature and quality of the contacts with the forum state; (2) the quality of the contacts with the forum state; (3) the relationship between the contacts and the cause of action; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. *Wines,* at 42 (citation omitted). The last two factors are secondary factors and are not determinative. *Mountaire Feeds, Inc. v. Agra Impex, S.A.,* 677 F.2d 651, 654 (8th Cir.1982).

(i) Banque Indosuez

■ In support of its motion to dismiss for lack of personal jurisdiction, Banque Indosuez contends that it has not engaged in any actions within the state of Missouri which would justify the Court's assertion of extra-territorial jurisdiction over it. In response, plaintiffs note that Banque Indosuez (1) financed a loan to 8080 Central, a California limited partnersip with plaintiffs, both Missouri residents, as limited partners; (2) took as partial collateral for that loan the unsecured promissory note executed by plaintiffs; (3) entered into a service agreement with Union Planters; (4) instructed Union Planters as its agent to monitor, collect and service plaintiffs' promissory note; and (5) instructed Union Planters to notify General Insurance to make demand on plaintiffs and, in effect, thereby made demand itself on plaintiffs. As a consequence plaintiffs contend that Banque Indosuez has transacted business in Missouri within the meaning of § 506.500, R.S.Mo. (1986), and that its contacts with Missouri are sufficiently purposeful to satisfy the requirements of the due process clause. The Court finds their contention to be without merit.

The pertinent facts adduced from the affidavit of Henry A. Turner submitted in support of Banque Indosuez's motion and not controverted by plaintiffs are as follows. Banque Indosuez is a banking corporation organized and existing under the laws of the Republic of France with its principal place of business in Paris, France. Affidavit of Henry Turner, ¶ 2. It is a wholly-owned subsidiary of the Compagnie Financiere de Suez, a French corporation which is in turn wholly-owned by the Republic of France. Affidavit of Henry Turner, ¶ 2. In the United States, it has branch offices in New York, Atlanta, Chicago, Los Angeles and, through its subsidiary, Houston. Affidavit of Henry Turner, ¶ 3. Banque Indosuez is not qualified to do business in Missouri. Affidavit of Henry Turner, ¶ 4. It does not have an office in Missouri, does not own real estate in Missouri, and does not have an agent, for service of process or otherwise, in Missouri. Affidavit of Henry Turner, ¶ 4.

In April 1985, Banque Indosuez was approached in its office in Atlanta regarding the possibility of making a loan to 8080 Central. Affidavit of Henry Turner, ¶ 5. In September 1985, a loan agreement between Banque Indosuez and 8080 Central was finalized whereby Banque Indosuez agreed to lend 8080 Central an amount not to exceed $16,500,000. Affidavit of Henry Turner, ¶ 7. Under the terms of the loan agreement, the loan amount was secured by the assignment by 8080 Central to Banque Indosuez of certain promissory notes executed by various investors, including plaintiffs, purchasing interests as limited partners in 8080 Central. Affidavit of Henry Turner, ¶¶ 5, 7. The notes were secured by a guaranty bond/indemnification agreement issued by General Insurance. Affidavit of Henry Turner, ¶¶ 5, 7. The financing was evaluated on the basis of the credit risk of General Insurance, and not on the basis of the credit risk of either 8080 Central or its limited partners. Affi-

davit of Henry Turner, ¶ 6. In January 1986, Banque Indosuez entered into a service agreement with Union Planters whereby Union Planters agreed to collect the sums due under the promissory notes assigned to Banque Indosuez. Affidavit of Henry Turner, ¶ 9. None of the above-mentioned financial arrangements involved any contacts by Banque Indosuez in Missouri. Affidavit of Henry Turner, ¶ 10. Moreover, neither Banque Indosuez nor anyone acting on its behalf was involved in the sale of an interest in 8080 Central or assisted in the sale of such interest. Affidavit of Henry Turner, ¶ 11.

Based on the foregoing, the Court concludes that plaintiffs have failed to make a prima facie showing that Banque Indosuez was engaged in the "transaction of any business" within Missouri as is required by the state's long-arm statute. Although the Missouri courts have liberally construed the "transaction of any business" requirement, they have nevertheless required some activity, directly or indirectly related to the transaction in question, on the part of the nonresident defendant in Missouri. *Institutional Food Marketing Assoc., Ltd. v. Golden State Strawberries,* 747 F.2d 448, 456 (8th Cir.1984); *Scullin Steel,* 676 F.2d at 312. *See also Osage Homestead, Inc. v. Sutphin,* 657 S.W.2d 346, 350 (Mo. Ct.App.1983) (a telephone order from one state to another is an insufficient basis for long-arm jurisdiction); *TSE Supply Co. v. Cumberland Natural Gas Co.,* 648 S.W.2d 169, 170 (Mo.Ct.App.1983) (telephone conversations and written correspondence are an insufficient basis for long-arm jurisdiction). There are simply no allegations before the Court which would suggest that Banque Indosuez engaged in any activity within Missouri. Both the negotiations between it and 8080 Central respecting the loan it made to the partnership and the negotiations between it and Union Planters respecting the service agreement executed by them took place outside of Missouri. Moreover, and even if it can be assumed that Union Planters was acting as Banque Indosuez's agent when it made demands on plaintiffs, Union Planters' own contacts with Missouri, consisting solely of telephone calls and written correspondence to plaintiffs,[3] are insufficient to permit this Court to exercise jurisdiction over Banque Indosuez. *See Osage Homestead,* 657 S.W. 2d at 350; *TSE Supply,* 648 S.W.2d at 170.

Alternatively, the Court concludes that its exercise of personal jurisdiction over Banque Indosuez would not comport with the requirements of due process. As set forth above, the Eighth Circuit's "minimal contacts" standard requires this Court to focus upon the relationship between the defendant, the forum and the litigation. In the present case, there is no evidence of any direct contact between Banque Indosuez and Missouri. As plaintiffs point out Banque Indosuez may well have been an "essential player" in the financing of 8080 Central and indeed was assigned a promissory note by 8080 Central which was executed by plaintiffs, two Missouri residents. However, these contacts do not evince any direct relationship between Banque Indosuez and Missouri. Moreover, and again assuming that Union Planters was acting as Banque Indosuez's agent when it made demands on plaintiffs, Union Planters' contacts with Missouri, consisting of telephone calls and written correspondence to plaintiffs, are insufficient to establish the requisite minimum contacts with Missouri. *See Golden State Strawberries,* 747 F.2d at 456 (phone conversations and written correspondence insufficient contacts), *Mountaire Feeds,* 677 F.2d at 656 (conversations and correspondence insufficient even where defendants used forum state bank to arrange payments). Finally, plaintiffs contend that both the interest of the forum state in providing a forum for its residents and the convenience of the parties require this Court to exercise jurisdiction over Banque Indosuez. The Court is unpersuaded as it finds that such factors, standing alone, are secondary and not controlling. *Mountaire Feeds,* 677 F.2d at 654.

### (ii) Union Planters

██ In support of its motion to dismiss for lack of personal jurisdiction, Union

---

**3.** See the Affidavit of Pamela Guthrie filed in support of Union Planters' motions to dismiss for lack of personal jurisdiction and discussed in Part A(ii) of this Memorandum.

Planters contends that it has not engaged in any activites within the state of Missouri which would permit this Court to exercise jurisdiction over it. In response, plaintiffs note that Union Planters (1) entered into a service agreement with Banque Indosuez in connection with Banque Indosuez's loan to 8080 Central, a California limited partnership with plaintiffs, both Missouri residents, as limited partners; (2) monitored, collected and serviced a promissory note executed by plaintiffs as an agent of Banque Indosuez; and (3) notified and instructed General Insurance to make demand on plaintiffs and, in effect, thereby made demands itself on plaintiffs. Thus, plaintiffs argue, Union Planters transacted business in Missouri within the meaning of § 506.500, R.S.Mo. (1986), and had sufficiently purposeful contacts within Missouri to satisfy the requirements of the due process clause. The Court disagrees.

In support of its motion, Union Planters submitted the affidavit of Pamela W. Guthrie. The pertinent facts which are not controverted by plaintiffs are as follows. Union Planters is a national banking association formed under the laws of the United States with its principal place of business in Memphis, Tennessee. Affidavit of Pamela Guthrie, ¶ 2. It does not maintain an office outside of Tennessee, but, through its subsidiaries, maintains offices in New York and Birmingham. Affidavit of Pamela Guthrie, ¶ 3. It is not qualified to do business in Missouri, it has never maintained an office in Missouri, and it has not designated an agent for service of process in Missouri. Affidavit of Pamela Guthrie, ¶ 4.[4]

In January 1986, Union Planters entered into a service agreement with Banque Indosuez whereby it agreed to act as a servicing agent with respect to certain promissory notes, including a promissory note executed by plaintiffs, which had been assigned by 8080 Central to Banque Indosuez. Affidavit of Pamela Guthrie, ¶ 6. Under the terms of the service agreement,

Union Planters agreed to collect the note payments, to invest these funds pending remittance to Banque Indosuez, to file any claims under the guaranty bond/indemnification agreement and to remit these funds to Banque Indosuez. Affidavit of Pamela Guthrie, ¶7. Prior to entering into the service agreement, Union Planters neither reviewed nor analyzed any information regarding the investors in 8080 Central whose notes it would be collecting. Affidavit of Pamela Guthrie, ¶ 8. It did not communicate with 8080 Central, or anyone acting on its behalf, regarding the promissory notes or the investors in 8080 Central. Affidavit of Pamela Guthrie, ¶ 8. The only communication between Union Planters and any investor in 8080 Central concerned the collection of the promissory notes. Affidavit of Pamela Guthrie, ¶ 9. It did not send an agent into Missouri to collect plaintiffs' payments due under the promissory note. Affidavit of Pamela Guthrie, ¶ 9. Thus any contacts Union Planters may have had with plaintiffs would have been through telepone calls or written correspondence.

Based on these facts, the Court finds that plaintiffs have failed to make a prima facie showing that Union Planters engaged in the "transaction of any business" in Missouri. As discussed above, the Missouri courts, in construing the "transaction of any business" test contained in Missouri's long-arm statute, require some activity, directly or indirectly related to the transaction in question, on the part of the nonresident defendant in Missouri. *See, e.g., Golden State Strawberries*, 747 F.2d at 456; *Scullin Steel*, 676 F.2d at 312. Here Union Planters' only contacts in Missouri consisted of telephone calls and written correspondence to plaintiffs. These contacts, standing alone, do not constitute the "transaction of any business" in Missouri. *See, e.g., Osage Homestead*, 657 S.W.2d at 312; *TSE Supply*, 648 S.W.2d at 170. Plaintiffs' reliance on *State ex rel.*

---

**4.** Union Planters does handle a trust account for a Missouri couple and may handle trust accounts which include property in Missouri. In addition, it has made loans to customers in

Missouri. However, these contacts in Missouri are not related to the events which have given rise to plaintiffs' cause of action against it. Affidavit of Pamela Guthrie, ¶ 5.

*People's Bank v. Stussie,* 536 S.W.2d 934 (Mo.Ct.App.1976) and *St. Louis Savings & Loan v. Silverado Banking,* 626 F.Supp. 379 (E.D.Mo.1986) is misplaced. *Stussie* is distinguishable because representatives of the defendant nonresident bank came into the state of Missouri on several occasions to meet with representatives of plaintiff in order to negotiate the contract entered into between the nonresident bank and plaintiff. *Silverado* is likewise distinguishable as the nonresident defendant solicited, negotiated and signed an agreement with plaintiff in the state of Missouri.

The Court also finds that its exercise of jurisdiction over Union Planters would not comport with the requirements of the due process clause. Applying the Eighth Circuit's "minimum contacts" standard, the Court notes that Union Planters' contacts with Missouri consisted only of telephone calls and written correspondence to plaintiffs. As the Eighth Circuit held in *Scullin Steel,* "[t]he use of interstate facilities (telephone, mail) . . . are secondary or ancillary factors and cannot alone provide the 'minimum contacts' required by due process." *Scullin Steel,* 676 F.2d at 314. *See also Golden State Strawberries,* 747 F.2d at 456 (phone conversations and written correspondence insufficient contacts); *Mountaire Feeds,* 677 F.2d at 656 (same).

**B.  General Insurance's Motion to Dismiss or to Stay or to Transfer**

In support of its motion to dismiss or to stay or to transfer, General Insurance advances two arguments. First, it contends that plaintiffs are bound by a forum selection clause contained in the guaranty bond/indemnification agreement which requires suit to be brought in the state of Washington. Second, it contends that considerations of wise judicial administration require dismissal of this action due to the presence of a concurrent state proceeding in the Circuit Court of King County, State of Washington. Both the plaintiffs and the other defendants oppose the motion. For the following reasons, the Court finds General Insurance's arguments to be without merit and accordingly denies its motion.

(i) The Forum Selection Clause

■ The forum selection clause contained in the guaranty bond/indemnification agreement provides in pertinent part as follows:

> Investor hereby agrees that the Application for Surety and this Agreement shall be deemed to have been executed in the State of Washington, and the rights and liabilities of the parties hereto shall be determined in accordance with the laws of the State of Washington. Any action or proceeding of any kind against Investor arising out of or by reason of this Agreement *may* be brought in any state or federal court of competent jurisdiction in the State of Washington, *in addition to any other court in which such action might properly be brought,* and Investor hereby submits to the jurisdiction of any such court.

(Emphasis supplied.) Quite clearly, the forum selection clause does not require plaintiffs to file this action in the state of Washington. Its language is permissive, not mandatory. Indeed, the language anticipates and allows suits to be filed in any proper jurisdiction, including this Court. Moreover, the cases General Insurance cites which have enforced forum selection clauses are not to the contrary as those cases involved forum selection clauses which expressly provided for an exclusive and mandatory forum. *See Sun World Lines, Ltd. v. March Shipping Corp.,* 801 F.2d 1066 (8th Cir.1986); *Benge v. Software Galeria, Inc.,* 608 F.Supp. 601 (E.D. Mo.1985); *Dick Proctor Imports, Inc. v. Sumitomo Corp.,* 486 F.Supp. 815 (E.D. Mo.1980). Thus, the Court finds that the forum selection clause contained in the guaranty bond/indemnification agreement does not require the Court to dismiss this action.

(ii) The Concurrent State Proceedings

■ On April 24, 1987, six days prior to the date plaintiffs filed this action, General Insurance filed suit against plaintiffs and fifty-five other investors in 8080 Central in the Circuit Court of King County, State of Washington. In its suit, General Insurance

seeks to recover from these investors the damages it sustained as a result of their alleged defaults under the guaranty bond/indemnification agreements issued in connection with their investment in 8080 Central. As the state proceedings are substantially similar to these proceedings, General Insurance contends that considerations of wise judicial administration require the dismissal of this action. The Court disagrees.

Generally speaking, "the pendency of an action in ... state court is no bar to proceedings concerning the same subject matter in the [f]ederal court having jurisdiction." *McClellan v. Carland*, 217 U.S. 268, 282, 30 S.Ct. 501, 504, 54 L.Ed. 762 (1910). However, exceptional circumstances may exist which, in the interest of preserving judicial resources, may justify a federal court in dismissing an action before it. *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817–19, 96 S.Ct. 1236, 1246–47, 47 L.Ed.2d 483 (1976). As set forth in *Colorado*, a federal court, in assessing the appropriateness of dismissal in the event of an exercise of concurrent jurisdiction, may consider such factors as the inconvenience of the federal forum, the desirability of avoiding piecemeal litigation and the order in which jurisdiction was obtained by the concurrent forums. *Colorado*, 424 U.S. at 818, 96 S.Ct. at 1246. No one facter is determinative. *Id.* Moreover, "[o]nly the clearest justification will warrant dismissal...." *Colorado*, 424 U.S. at 819, 96 S.Ct. at 1247.

Based on the record now before it, the Court cannot find any clear justification which would warrant dismissal of this action. Although the state proceedings are similar to these proceedings, they are not identical. In the Washington action, General Insurance seeks to hold plaintiffs liable for their alleged default under the guaranty bond/indemnification agreement. Here, by contrast, plaintiffs seek a declaration of their rights and obligations under the agreement and, in the event the Court enforces the agreement, a declaration that both 8080 Central and the broker-dealers and securities firms involved in the transaction are jointly and severally liable for any

sums plaintiffs may be required to pay under it. There is no indication that the broker-dealers and securities firms, all of whom are citizens of Kansas, are amenable to suit in Washington. Thus if this Court were to dismiss this action and plaintiffs were ultimately adjudged liable under the agreement in Washington state court, plaintiffs may be required to refile suit in this Court to determine the respective obligations of the broker-dealers and securities firms. Rather than preserve judicial resources, such a dismissal might needlessly protract the litigation. Moreover, in considering plaintiffs' claims, this Court must construe the Missouri Blue Sky Laws, a task which has led the state of Missouri to intervene as an additional party plaintiff. This Court is clearly in a better position to interpret Missouri law than is the Washington state court.

In addition, this Court does not find that the federal forum is inconvenient to the parties. The action in Washington state court is not only pending in a court distant to plaintiffs, but also to most of the other parties remaining in this action who may not be amendable to suit in that jurisdiction. Finally, the Court is not convinced that the order in which jurisdiction was obtained by the concurrent forums is controlling in this action. On April 24, 1987, the day General Insurance filed suit against plaintiffs, General Insurance sent a demand letter to plaintiffs in which it warned them that if they did not make the payments due under the guaranty bond/indemnification agreement by April 30, 1987, it would be forced to recover the payments in court. Rather than make the payments, and before plaintiffs had been served with General Insurance's complaint, plaintiffs filed this action on April 30, 1987. By misleading plaintiffs into believing suit would not be filed against them until April 30, 1987, General Insurance should not now be permitted to reap the benefit of filing first.

In *Colorado*, the Supreme Court noted "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given it." *Colorado*, 424 U.S. at 817, 96

S.Ct. at 1246. General Insurance has failed to present this Court with any compelling reason as to why this Court should not exercise its jurisdiction here. Accordingly, it denies General Insurance's motion to dismiss or to stay or to transfer.